## FLEXER v. CRAWLEY.—269 S. W. (2d) 598.

Western Section. December 2, 1953.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

John T. Shea, Harry C. Pierotti and Leonard D. Pierotti, all of Memphis, for plaintiff in error.

McDonald, Kuhn, McDonald & Crenshaw, of Memphis, for defendant in error.

CARNEY, J.   Appeal in error by plaintiff, Mrs. Eleanor H. Flexer, from a judgment of the Circuit Court of Shelby County, Tennessee, overruling her motion for a new trial and approving a jury verdict in favor of the plaintiff against the defendant, Miss Billie C. Crawley, in the amount of $545 for personal injuries, plus $223.61 property damage, making a total of $768.61.   The principal Assignment of Error is that the verdict of the jury was so inadequate as to evince passion, prejudice or unaccountable caprice on the part of the jury, and that, therefore, the verdict should be set aside and the plaintiff awarded a new trial.

The defendant strongly resisted and denied any liability and denied that the plaintiff was entitled to recover for any personal injuries, but admitted that the property

damages to plaintiff's automobile amounted to $223.61.

The automobile collision out of which this lawsuit grew occurred on November 26, 1951, in the City of Memphis, Tennessee. The plaintiff is a woman of considerable financial standing whose annual salary amounted to approximately $7,500 as Secretary-Treasurer of two corporations engaged in the theater business, and the stock of which was owned almost exclusively by plaintiff and her husband.

Plaintiff's version of the collision is as follows: On November 26, 1951, at approximately 10:30 A. M. plaintiff was driving west on Union Avenue in an automobile and had stopped her automobile at the rear of a panel truck which was stopped at the intersection of Union and Marshall Streets awaiting the change of traffic lights. The traffic light changed to green, the line of traffic started forward slowly and the panel truck driven by the witness, Butler, was compelled to stop very suddenly because some other automobile in the traffic lane stopped. Plaintiff, likewise, stopped her automobile several feet to the rear of the panel truck. She looked in her rear view mirror and saw defendant driving her new Ford automobile directly behind her in the same lane of traffic at a rapid rate of speed, and the defendant drove on under the traffic light under which plaintiff had just passed and was not looking straight ahead but was turned to the right talking to a young lady in the front seat with her, and defendant's car proceeded on without slowing down and crashed into the rear of plaintiff's car. Plaintiff contends that at the time of the crash she had her foot on the brake and had hold of the wheel in an effort to brace herself from the collision which she thought inevitable. The front end of plaintiff's car was knocked

into and under the back end of the panel truck and the panel truck was in turn shoved forward a very short distance.

The defendant contended that her new car had been in excellent working order and that just a short while before the collision the foot brake was working and that as she approached the intersection plaintiff's car slowed up and the red light at the rear flashed indicating a sudden stop, and the defendant attempted to apply the foot brake and the brake pedal came off, along with her shoe, and she crashed into the back of plaintiff's car before she had time to use the hand brake or stop; that she was going very slowly and was keeping a proper lookout and did not have her face turned to the right talking to her companion on the front seat.

In rebuttal plaintiff introduced the testimony of Mrs. Ollie Nichols to the effect that she had been a long time friend of the defendant and that the defendant in confidence told her she had crashed into plaintiff's car; and that the defendant was not looking, and that someone had removed the brake pedal for her and saying, in substance, to the defendant that always in case of a wreck or collision remove the brake pedal and you will be in the clear.

As to her personal injuries, plaintiff's testimony and that of her attending physicians prove the following: That she sustained a very severe neck injury in that her head was violently popped from a ''whip-lash'' movement. After the police were called and the usual investigation made, plaintiff drove her automobile on to her office where she became very ill and in a short time returned home and to bed, after which she began to suffer considerable headaches, but did not then realize the full

import of her injuries. She attempted to fulfill a dinner engagement that evening but had to leave before the evening was over due to the increasing pain and discomfort. The following day she was treated at home by her doctor, was deathly nauseated, suffered increasing pain and soreness about her neck and head and after four or five days she consulted a new doctor who had her hospitalized. She stayed in the hospital thirteen days and upon the suggestion of her second physician was treated by Dr. Gotten, a neuro-surgeon. Her head was placed in traction; hot packs were applied to the muscles, together with massages; she was fed intravenously three times a day for several days, and she was attended by three special nurses around the clock during her stay in the hospital. A Thomas collar was prepared after she was removed from traction, and she wore the Thomas collar from December 1951 up until May 1952. The effect of wearing the Thomas collar was to more or less limit the motion of the neck and according to the testimony of Dr. Tullis, plaintiff had considerable difficulty in adjusting herself to the use of this collar.

The testimony of the doctors was to the effect that plaintiff was seriously ill, but not dangerously ill in the sense that she nearly died; she lost approximately 25 pounds during the illness. The numerous X-rays taken did not reveal any broken bones; however, they did reveal some edema or hemorrhage in the soft tissues on the anterior surface of the vertebrae and while the doctors testified that due to some emotional disturbance on the part of the plaintiff, they had difficulty in evaluating the amount of pain sustained by plaintiff, yet they were clear in their testimony that the plaintiff did suffer considerable pain.

The actual medical expenses paid by plaintiff and sued for by her were as follows:

| | |
|---|---:|
| Doctors' bills | $240.00 |
| Nursing bills | 425.00 |
| Ambulance | 5.00 |
| Thomas Collar brace | 6.63 |
| X-rays | 18.00 |
| Hospital bills | 253.20 |
| Total | $937.83 |

At the time of the trial in February 1953 plaintiff testified that in her opinion she had fully recovered except for a few recurring headaches, though her husband testified she was not fully recovered.

As we mentioned above, the jury returned a verdict for the entire amount of the agreed property damage and awarded plaintiff judgment for personal injuries of only $545.

There is no evidence before the jury or charge by the Court concerning contributory negligence on the part of plaintiff justifying or requiring a mitigation of plaintiff's damages. Likewise, there was no proof in the record on the part of defendant contradicting plaintiff or the testimony of her three doctors concerning her medical expenses or injuries sustained. One of plaintiff's doctors referred to some domestic worries which plaintiff had at the time of the injury which delayed or retarded her recovery, but from the uncontradicted evidence of the doctors and the plaintiff and her witnesses, it clearly appears that the injuries sustained were the direct and proximate result of the automobile collision involved in this litigation.

The defendant contends that the matter of the

damages is primarily for the jury to determine and that a verdict of the jury concurred in by the Trial Judge should not be overturned, citing Lunn v. Ealy, 176 Tenn. 374, 141 S. W. (2d) 893 and other cases of similar holding. However, we believe that that general statement is subject to the limitation that where the verdict of the jury is so grossly inadequate in comparison with the injuries actually sustained and proven as to evince passion, prejudice or unaccountable caprice on the part of the jury, that the appellate courts will look into the facts and set the verdict aside. The leading case in Tennessee on this question and one strongly relied upon by plaintiff-in-error is W. T. Grant & Co. v. Tanner, 170 Tenn. 451, 95 S. W. (2d) 926. To the same general effect see 39 Am. Jur., New Trial, Sec. 147, p. 153 in which the following statement is made:

"* * * It is generally recognized that the court may order a new trial in an action for personal injury where the smallness of the award induces the conviction that the verdict was the result of mistake, misapprehension, oversight, or misconduct such as passion, prejudice, or partiality, on the part of the jury. Relief will be granted where the finding is "grossly" inadequate and the compensation given entirely disproportionate to the injury which is proved to have been sustained, or when it appears, upon the facts proved, that the jury must have omitted to take into consideration some of the elements properly involved in the plaintiff's claim. * * *"

In 16 A. L. R. (2d) p. 393, there is a very extensive and exhaustive annotation and collection of the cases in which various judgments are reviewed and some held

adequate and some held inadequate. Likewise, in 20 A. L. R. (2d), p. 276, there is a short annotation and collection of cases which hold that a verdict is invalid which allows the plaintiff the exact amount of his medical expenses without similarly awarding him damages for pain and suffering where claim for such was properly made and proven. In a footnote in this same annotation the editor makes this statement: "Cases in which the damages awarded, in a personal injury action, amounted to even less than the amount of plaintiff's undisputed medical expenses are not within the scope of this annotation, it being obvious that such verdict is inadequate"; citing a number of cases.

Attorneys for defendant very candidly admit in their brief that the jury did not believe the theory of the defendant that her brake pedal came off and that she was without negligence in the premises as indicated by the verdict for the plaintiff for the full amount of the property damages and a portion of the medical expenses. Obviously, no allowance was made for the pain and suffering sustained by the plaintiff.

Defendant also contends that the case at bar is to be distinguished from the case of W. T. Grant & Co. v. Tanner, supra, in that the damages sustained by the plaintiff in which the award was held inadequate were objective and could be seen, to wit, a hernia, whereas, in the instant case the plaintiff's alleged personal injuries were subjective and intangible and, therefore, the verdict of the jury indicates that they do not believe the plaintiff sustained any pain and suffering and that only a portion of the medical expenses were reasonably necessary and the direct result of the defendant's negligence.

With this insistence we must respectfully disagree. Plaintiff's three doctors, none of whom are impeached in

any manner, all testified that plaintiff sustained serious and painful injuries; that she underwent extensive and somewhat painful treatment; that she was violently nauseated for many days; that she lost considerable weight; that she was required to wear the uncomfortable Thomas collar for many weeks as a result of the personal injuries sustained in the automobile collision involved in this litigation. A bruise or injury to the soft tissues, in our opinion, can and often does cause the most excruciating pain and suffering; much more than that caused by hernia.

█ . If the plaintiff was entitled to recover for damages to her car and a portion of her medical expenses, then she was also entitled to have the jury award her reasonable damages for her personal injuries, including pain and suffering. We are unable to reconcile the verdict of the jury with the undisputed evidence which was presented in the case. W. T. Grant & Co. v. Tanner was cited and differentiated but not overruled or disapproved in the recent case of High v. Lenow, Tenn. Sup., 258 S. W. (2d) 742. Therefore, we feel that Assignments of Error Nos. 1, 2, 3 and 4 which relate to and complain of the inadequacy of the verdict must be sustained and the judgment of the Trial Court must be reversed.

Assignments of Error Nos. 5, 6, 7, 8, 9 and 10 all relate to requested charges which were refused by the Trial Court or alleged improper charges by the Trial Court and are concerned only with the liability of the defendant and not with the amount of damages awarded by the jury. Since the verdict of the jury on the issue of liability was in favor of the plaintiff, plaintiff was not prejudiced by said alleged errors and, therefore, said Assignments of Error are overruled without consideration by us.

A judgment will be entered in this Court reversing the judgment of the Trial Court and remanding the case to the Circuit Court of Shelby County, Tennessee, for a new trial, not only on the issues of damages sustained by the plaintiff, but upon all other issues in the case as determined in W. T. Grant & Co. v. Tanner, supra.

Swepston, P. J., and Avery, J., concur.