SNOWDEN, et al. *v.* SKIPPER

No. 40432 March 25, 1957 93 So. 2d 834

*Ethridge, Minniece & Bourdeaux*, Meridian, for appellants.

*Lester F. Williamson, Miss Betty J. Long,* Meridian, for appellee.

Holmes, J.

The appellee, R. L. Skipper, filed this suit in the Circuit Court of Lauderdale County against C. B. Rawl-

ings and Mrs. Alice Rawlings, doing business under the trade name of White Top Cab Company, and against Edward Snowden, seeking the recovery of damages, both actual and punitive, for personal injuries alleged to have been sustained by the plaintiff while riding as a passenger in a taxicab operated by the defendants.

It was alleged in the declaration that the defendants were engaged in the taxicab business as a common carrier of passengers for hire, and that a taxicab engaged in said business was on the occasion in question being driven by the defendant, Edward Snowden; that the injuries suffered by the plaintiff were sustained when the driver of the taxicab negligently stopped the same in the traveled portion of the highway and an automobile driven by one Kenneth Clark Boardman struck the taxicab from behind. Boardman was not sued.

Liability of the defendants was predicated upon the charge that the driver of the taxicab negligently brought his vehicle to a sudden stop in the traveled portion of the highway without giving any warning by the use of hand signals, arm signals, blinker lights or other type signal, and so stopped the same as to completely block the traveled portion of the highway and so as to become a hazard to other travelers on the highway, including the plaintiff, and that plaintiff's injuries proximately resulted therefrom.

The proof disclosed that C. B. Rawlings had no interest in or connection with the White Top Cab Company and a peremptory instruction was granted as to him. On the submission of the case to the jury, the jury returned a verdict in favor of the plaintiff for $5,000 and judgment was entered accordingly. It is from this judgment that the appellants prosecute this appeal.

The appellants have submitted a number of assignments of error and among them is the assignment that the court erred in refusing the request of the appellants

for a peremptory instruction, and it is to this latter assignment that we first address ourselves.

The appellants were engaged in the business of furnishing taxi service to the public. On the occasion in question a taxicab employed in the business was being driven by the appellant Snowden and was occupied by the appellee as a passenger for transportation to his home near Marion. The course of travel was eastwardly on 14th Street to the intersection of 14th Street and 8th Avenue where there was a traffic light, and then northerly on U. S. Highway 45. Snowden stopped his cab on highway 45 in the City of Meridian for the purpose of taking on a sailor who was standing by the highway and apparently seeking a ride. While his cab was stopped it was struck from behind by a car driven by Kenneth Boardman, resulting, as appellee alleges, in his injuries. The collision occurred at about six o'clock P. M. It was about dark. Highway 45 is paved from curb to curb, and on the occasion in question it had been raining and the pavement was wet. The collision occurred on Highway 45 a short distance north of the traffic light at the intersection of 14th Street and 8th Avenue.

Snowden testified that he was headed north and that he stopped his taxicab on the highway next to the curb; that before he stopped he looked back through the rear view mirror and saw no cars close to him; that there was ample space to his left in the northerly lane of traffic for vehicles to pass and that in fact two or three cars proceeding in a northerly direction passed him after he stopped before he was struck by the Boardman car; that he did not see the Boardman car until after the impact; that his headlights, tail lights, top light and brake lights were on. He admitted he did not give a hand signal or arm signal before stopping.

The appellee testified that Snowden stopped his cab in the highway about five or six feet from the curb and

that he did not see Snowden look back or hold out his hand before stopping.

Boardman testified that on the occasion in question he was on his way home driving his 1953 Ford, 4-door Sedan; that the time was about 6:30 P. M.; that it had been raining and the street was wet and it was getting dark enough for head lights to be turned on; that he had been proceeding easterly on 14th Street and that he reduced his speed to about ten miles per hour as he approached the overhead traffic light at the intersection of 14th Street and 8th Avenue; that the traffic light changed to green before he reached it and that he followed another car through the light and turned onto highway 45 so as to proceed north; that he had just started to increase his speed after traveling about a half block from the traffic light when he noticed for the first time a car stopped on the highway; that the rear lights of the stopped car were on but he did not think the brake lights were on. On the trial he testified that the cab was stopped near the center line of the pavement. In a written statement given and signed by him before the trial, he said that the car was parked "at the curb." He further testified that when he noticed for the first time the stopped car he was about 20 feet from it and was traveling about 20 miles per hour, and that he applied his brakes and skidded into the parked car; that the car ahead of him had pulled around the car that had stopped; that he failed to see the stopped car until too late because he was rounding a curve and watching oncoming traffic and the car ahead of him.

A consideration of the foregoing testimony leads us to the conclusion that the only questions presented for determination on the issue of liability were whether Snowden negligently stopped his taxicab in the traveled portion of the highway in such position as not to provide proper clearance in the northerly lane of

travel for vehicles following, and in such position as to block such northerly lane of travel and become a hazard to other travelers proceeding north on said highway, and thereby proximately causing or contributing to the appellee's injuries, or whether Boardman was guilty of negligence in failing to keep a proper lookout and see the stopped car in time to go around it or avoid running into it, thereby contributing to or solely causing the accident. These were questions, and the only questions raised by the proof, for the determination of the jury under conflicting evidence, and the appellants were therefore not entitled to a peremptory instruction.

The appellants also assign as error that the trial court erred in submitting to the jury the issue of the alleged negligence of Snowden in stopping his taxicab on the highway without giving any warning by the use of hand signals, arm signals, blinker lights or other type signal. We think this contention is well founded under the facts of this case, and that the court's submission of this issue to the jury constitutes reversible error. Boardman testified, and he is not contradicted, that when he first saw the cab it had already stopped and the headlights and tail lights on it were burning. It was, therefore, immaterial under the facts of this case whether Snowden before stopping gave any signals or not, and Sections 8192 and 8193 of the Mississippi Code of 1942 with reference to giving signals do not apply. If Snowden had given any signals before stopping, they would not have been effective to warn Boardman because the cab was already stopped when Boardman first saw it. The situation is analagous to that arising under Section 7777 of the Mississippi Code of 1942 requiring that locomotives give warning signals when approaching a crossing. Dealing with this section, this Court, in the case of Gulf, M. & O. R. Co. v. Baggett, 193 Miss. 356, 8 So. 2d 246, said: "In ac-

cordance with the previous decisions and with the rule in other States, this Court held in Thompson v. Mississippi Central R. R. Co., 175 Miss. 547, 166 So. 353, that where the driver of an automobile at a crossing actually saw nearby in unobscured daylight an approaching train and was thus informed both of its presence and of its proximity in time to avoid going upon the crossing, the failure to give the statutory crossing signals, if there were such a failure, became thereby a matter wholly immaterial in the determination of the case.''

██ ██ In connection with this contention and since this case is to be retried, we deem it appropriate to say that instruction No. 15 refused to the defendants is subject to criticism in that it instructs the jury that there was no duty on Snowden to give any signal that he was stopping at the time and place complained of in the declaration, and that even though the jury may believe from the evidence that he failed to give such signal, such failure was not negligence. This instruction as drawn is calculated to be misleading to the jury. Of course the defendant Snowden was under a duty to give such signals as the statute required, but his failure to do so under the facts of this case became immaterial. Further, the instruction informs the jury that the failure to give the signal was not negligence, whereas such failure might constitute negligence but not negligence proximately causing or contributing to the injury.

The appellants further complain that the trial court erred in granting to the appellee the following instruction:

''The court instructs the jury for the plaintiff, that if the jury believe from a preponderance of the evidence that the defendants in this case were guilty of negligence in the operation of the taxicab and the stopping of said taxicab within the travel portion of the paved highway over which it was being operated under the conditions

and circumstances that existed when the cars collided, and that such negligence, if any, of the defendants was a substantial factor in bringing about harm to the plaintiff and was a proximate cause thereof, or one of the proximate causes thereof, the fact, if it be a fact, that the driver of the taxicab neither foresaw or should have foreseen the extent of the harm or the manner in which it occurred, if it occurred, does not prevent the defendants from being liable to damages to the plaintiff in this case."

The appellants' criticism of this instruction is that it assumes as a fact that the taxicab was stopped within the traveled portion of the paved highway. We think it does assume such to be a fact and the proof shows such to be a fact, since the taxicab even if parked next to the curb was still within the traveled portion of the highway. The instruction was erroneous, however, and should not have been given, since it was calculated to mislead the jury in that it did not clearly submit to the jury the issue as to whether the taxicab was so stopped in the traveled portion of the highway as to obstruct the highway and become a hazard to other persons using the same.

It is further complained by the appellants that the trial court erred in refusing to grant them instruction No. 18, reading as follows: "The court instructs the jury for the defendants that at the time and place alleged in the plaintiff's declaration the Defendant Snowden had a right under the law to stop and pick up a passenger without pulling off on the shoulder of the street."

We are of the opinion that this instruction was properly refused. The instruction announces to the jury that the appellant Snowden had the lawful right to stop his cab on the highway for the purpose of picking up a passenger. We do not think this is correct. Snowden's right to stop his cab on the highway for the purpose of

picking up a passenger is measured by the reasonable care exercised by him in stopping his cab in such manner and at such place on the highway as to reasonably avoid injury to others, having due regard for the traffic on the highway and the circumstances and conditions existing at the time.

It is also contended by the appellants that the trial court erred in overruling their motion for a mistrial. The motion was based upon the ground that the plaintiff in his examination of witnesses disclosed to the jury that the liability of the defendants in this case was covered by liability insurance. The record discloses the following pertinent to this contention: In the examination of Mr. Boardman by plaintiff's counsel, the following questions and answers appear:

"Q. I believe that it was brought out in the testimony that you paid $30 or something for damage done to his car. Tell this jury why you paid it?

"A. He came around the next day and said if I didn't fix his car he would take it to court and have my driver's license taken because I didn't have liability insurance.

"Q. What did you decide to do?

"A. I figured it would be cheaper to have his car fixed."

It is argued by the appellants that this was prejudicial to them in that it raised an inference that Boardman was not sued because he had no liability insurance and that Mrs. Rawlings and Snowden who were sued did have liability insurance.

Again the record shows that when plaintiff's counsel was examining Boardman with reference to the statement which he signed prior to the trial, the following occurred:

"By Mr. Williamson: Q. This statement that was taken September 26, was it taken by someone representing you?

"By Mr. Minniece: We object, if the court please.

"By the Court: Yes, sir, ask him directly who wrote it?

"By Mr. Williamson: Q. Who wrote this statement?

"A. I don't remember the man's name, he was an insurance adjuster.

"Q. For who?

"A. The taxicab company."

Again the record discloses the following examination of Mr. Boardman by plaintiff's counsel:

"Q. Did you dictate this, or is this the words of the insurance adjuster?

"A. That is the words of the insurance adjuster."

 It is thus clearly established in the record that there was a disclosure by plaintiff's examination of witnesses that the defendants were covered by liability insurance. This Court, in a long line of decisions, has held that the disclosure by plaintiff's examination that the defendant is covered by liability insurance is condemned and constitutes reversible error. Herrin, Lambert & Co. v. Daly, 80 Miss. 340, 31 So. 790; M. & A. Motor Freight Lines v. Villere, 190 Miss. 848, 1 So. 2d 788; Odom, et al v. Walker, 193 Miss. 862, 11 So. 2d 452; Walley, et al v. Williams, 201 Miss. 84, 28 So. 2d 579. Cf. also Peterman, et al v. Gary, 210 Miss. 438, 49 So. 2d 828 and Lancaster v. Lancaster, 213 Miss. 536, 57 So. 302.

A situation analagous to that in the case at bar appears in the case of M. & A. Motor Freight Lines v. Villere, supra, wherein there were certain photographs offered in evidence. An examination of the witnesses by plaintiff's counsel was as follows:

"Q. Did you get a call to take these pictures?

"A. Yes, sir.

"Q. Who called you?

"A. I was called by the New Amsterdam Insurance Company."

The court in that case held that such disclosure of liability insurance was reversible error and that the court should have granted the defendant's motion for a mistrial.

In Odom, et al v. Walker, supra, the Court said: "This Court has consistently held that evidence or statements before the jurors informing them correctly or incorrectly that defendant is insured against liability for which the suit is brought is error."

In the case of Walley, et al v. Williams, supra, the Court, in condemning proof of the fact that the defendant was covered by liability insurance, and citing prior decisions of this Court, said: "We not only reaffirm what was held in those cases but affirm that we have no intention to qualify or recede from them in the slightest."

■■ In view of the foregoing state of the record, we have no difficulty in concluding that the disclosure to the jury of the fact that the defendants were covered by liability insurance as shown in this record was highly prejudicial to the defendants and constitutes reversible error.

■■ It is argued by the appellee, however, that the appellants made no objection to the testimony which developed the fact that the defendants were covered by liability insurance and cannot now be heard to complain. It is true that no specific objection to the testimony was made by the appellants at the time but upon the conclusion of the testimony of the witness Boardman the appellants, in the absence of the jury, made a motion for a mistrial upon the grounds of the disclosure of the fact that the defendants were covered by liability insurance. The trial judge was afforded ample opportunity, therefore, before the submission of the case to the jury to

pass upon the question, and we are clearly of the opinion that the rights of the appellant to except to the testimony were preserved by the motion for a mistrial. In the case of Blackwell v. State, 44 So. 2d 409, the Court said:

"It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial."

The failure of the court to sustain the motion for a mistrial in our opinion constitutes reversible error. It follows that for the errors of the trial court hereinbefore mentioned, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee* and *Kyle,* JJ., concur.