JULIA E. MAUPIN WOOD, Plaintiff-in-Error, v. HAROLD WAYNE CRAIG, Defendant-in-Error. —424 S.W.(2d) 561.

Western Section at Jackson. January 25, 1967.

Certiorari Denied by Supreme Court August 21, 1967.

686

Harold R. Ratcliff, Mary Guidi, Memphis, for plaintiff in error.

R. Dale Woodall, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for defendant in error.

CARNEY, J.   Upon the trial below the jury returned a verdict in favor of the plaintiff-in-error, Mrs. Julia E. Maupin Wood (now Beckum), for $1,550 for personal injuries sustained in an automobile collision on February 8, 1965, in the City of Memphis. Plaintiff's automobile was struck from the rear by an automobile driven by the defendant, Harold Wayne Craig. The Trial Judge directed a verdict in favor of the plaintiff on the issue of liability. There has been no appeal from this action and the question of liability is no longer involved in this litigation. The plaintiff was dissatisfied with the amount of her recovery and filed a motion for a new trial listing several grounds. The motion for a new trial was overruled, judgment entered and the plaintiff below, Mrs. Wood, has appealed in error to this court.

By assignment of error No. I the plaintiff insists that the amount of the jury verdict is so inadequate as to indicate unaccountable passion, prejudice or caprice on the part of the jury. She asked for a new trial under the authority of the cases of Flexer v. Crawley, 37 Tenn. App. 639, 269 S.W.2d 598; Kent v. Freeman, 48 Tenn.App. 218, 345 S.W.2d 252, and others.

Plaintiff, aged 37, was a waitress in a restaurant at the time of the automobile collision. She contended that she sustained permanent partial injuries to her back as a result of the wreck and had been able to work very little

since the accident. The defendant contended that the plaintiff did not sustain any substantial injuries as a result of the collision and that her ailments pre-existed the accident.

Plaintiff testified that she blacked out shortly after the collision and was sent to the hospital by her physician, Dr. Murphy, for two weeks. She was put in traction both for her neck and back as treatment for the injuries she allegedly received in the collision. After two weeks, Dr. Murphy recommended a neurosurgeon and plaintiff consulted Dr. Nicholas Gotten of Memphis, Tennessee.

Dr. Gotten examined her in his office on March 2, 1965. He testified that she gave him a history of the automobile accident and complained of extreme pain in her neck and back. Further, he testified that she appeared to be very tense and excited and was "hyper-reactive" to such an extent that a good evaluation of her injuries was impossible. He also testified that Mrs. Wood complained of chronic headaches which she related to the accident. She gave him no history of having had an injury to her back prior to the accident on February 8, 1965.

Dr. Gotten sent her back to the hospital on March 5, 1965, for further examination, possible x-rays, etc. The next day she left the hospital and refused further treatment from him because he refused to prescribe narcotics for her. She insisted that she needed the narcotics to stop the pain and Dr. Gotten testified that he refused to give her any because she had told him on the initial visit that she had taken narcotics on the trip to the hospital immediately after the accident without any benefit. Dr. Gotten made an initial provisional diagnosis as "headaches and psychoneurosis."

After seeing Dr. Gotten, Mrs. Wood later consulted a Dr. Patrick, also a neurosurgeon, and then later she consulted Dr. Murphy again. She testified that she continued to have neck and back pains during this period of time and was unable to work. On May 27, 1965, she moved to Florida where she married again. She lived with this husband only three weeks and separated from him. At the time of the trial on February 11, 1966, she had divorced her Florida husband who had been her fourth husband. On January 7, 1966, she married her fifth husband, Mr. Beckum.

Plaintiff testified that her hospital, doctors' and medicine bill, maid service, and cab fares amounted to a total of $1,033.13; that she was earning $100.00 per week as a waitress before the accident and that during the entire year 1965 she only earned $1,480 and that she had a wage loss in 1965 of $3,720 making total actual damages allegedly sustained as of the time of the trial of $4,753.13. She sought a judgment of this amount plus damages for mental and physical pain and suffering.

When Mrs. Beckum came back to Memphis from Florida for the trial, she was again examined by Dr. Gotten at his office on February 11, 1966, after which he gave his deposition which was offered in evidence in the cause in her behalf. Upon his second examination, Dr. Gotten found Mrs. Beckum to be still very tense and emotionally disturbed but he did find some evidence of cervical strain and back injury and he found some evidence of a mild disc disturbance but most of the symptoms of which she complained were subjective rather than objective. He recommended no treatment for her.

Dr. Walter H. Murphy, the physician whom Mrs. Beckum consulted immediately after the accident, testified

that in his opinion Mrs. Beckum did sustain some injury to her neck and back as a result of the automobile collision on February 8, 1965. It was on his recommendation that she consulted Dr. Gotten and also Dr. Patrick.

The defendant offered no medical proof relating to the physical condition of the plaintiff but relied upon the cross-examination of the plaintiff and her witnesses and hospital records. On cross-examination Mrs. Beckum admitted that she had been confined in the Baptist Hospital for three weeks in June, 1963, for an alleged injury to her back which she said was sustained when she picked up a heavy suitcase and strained her back. Also she admitted that on an occasion in January, 1965, she had injured her back when she slipped at her place of work. Mrs. Beckum stated she did not tell Dr. Gotten and Dr. Murphy about these prior injuries to her back because they did not ask her and she was hurting so bad she did not think about it. She insisted, however, that she had fully recovered from those two injuries at the time of the accident on February 8, 1965.

In our opinion there was ample evidence from which the jury could very reasonably have found that Mrs. Wood was not permanently and not seriously injured in the automobile collision with defendant's automobile. His Honor the Trial Judge approved the verdict and entered judgment thereon. Therefore, we hold that the verdict is not so inadequate as to indicate unaccountable passion, prejudice or caprice on the part of the jury and assignment of error No. I is respectfully overruled.

Assignment of error No. II insists that His Honor the Trial Judge erroneously refused to permit the jury

to consider the following hypothetical question and answer thereto contained in Dr. Gotten's deposition:

"Q Doctor, if you have a person who tends to be emotionally unstable or somewhat neurotic initially, and that person is involved in an automobile accident severe enough to where she, as she puts it, blacks out, what if any, effect does that automobile accident have on accelerating or aggravating that pre-existed unstable condition?

A Well, I think that any time that you have an unstable or highly neurotic person and they get any sort of physical injury, why, they are going to pretty well focus their attention on that, and it seems like from our knowledge of those individuals that they are harder to treat, harder to manage. Their symptoms are more persistent, more prolonged, assuming the injury to be the same."

The Trial Judge sustained an objection to the admissibility of the question and answer for the reason that the plaintiff had not pitched her case upon the theory of damages from the aggravation of pre-existing illness or injury. Only the defendant was insisting that the plaintiff's injuries, if any, pre-existed the automobile collision on February 8, 1965. Also Judge McRae predicated his exclusion of the question and answer on the grounds that the answer of Dr. Gotten was not responsive to the question. We affirm the action of the Trial Judge on the second ground stated by him, namely that the answer was not responsive to the question. We also hold that if the question and answer were erroneously excluded, it would be at most harmless error. T.C.A. Section 27-117. Therefore, the assignment is respectfully overruled.

▉ Assignment of error No. III complains of the action of the Trial Judge in admitting in evidence over objection of the plaintiff records of the Baptist Hospital concerning several illnesses of the plaintiff which antedated the date of the accident out of which the present lawsuit arose. Plaintiff had been in the Baptist Hospital seven times since 1960 and on at least one occasion she testified that her health had been good before the accident on February 8, 1965, except for minor colds. The proof showed that she had sustained a hysterectomy, had sustained the removal of a breast cyst; that when she was admitted on June 3, 1963, for pain in her low back region she gave a history of having three previous instances of supposedly slipped lumbar discs. The records also revealed that on August 16, 1963, the plaintiff was admitted to the Baptist Hospital in Memphis suffering from nausea, headaches and abdominal pain. In our opinion it was within the sound discretion of His Honor the Trial Judge to admit these records as evidence as corroborative of the defendant's theory, that plaintiff was not seriously injured in the collision of date February 8, 1965, but that her complaints of headaches and neck and back injuries antedated the collision. Therefore, assignment of error No. III is respectfully overruled.

: ▉ Assignment of error No. IV and V insist that the plaintiff should be awarded a new trial because the defendant's attorney, Mr. Woodall, attempted to interrogate Dr. Murphy concerning the contents of a letter received by Dr. Murphy from Dr. Patrick, the neurosurgeon, who had examined the plaintiff at the request of Dr. Murphy. Defendant's attorney insisted that he was entitled to cross-examine Dr. Murphy concerning the contents of the letter for the purposes of impeaching the

plaintiff. The Trial Judge refused to permit the cross-examination on the contents of the letter and we cannot say that the use of the word "impeach" on the part of Mr. Woodall, even though used several times, constituted reversible error. Assignments of error Nos. IV and V. are therefore respectfully overruled.

■ Assignment of error No. VI insists that the plaintiff was entitled to a new trial because the defendant's attorney, Mr. Woodall, in his closing argument to the jury made the statement, "The plaintiff pushed her car out into the street" after the collision when, as a matter of fact, it was pushed out into the street by policemen or passers-by. No objection was made by attorneys for the plaintiff at the time this statement was made.

■ Assignment of error No. VII contends that the plaintiff is entitled to a new trial because the defendant's attorney, in his closing argument, made the statement that "plaintiff drove her automobile to Florida." Objection was made by attorney for plaintiff to the latter statement insisting that there was no proof that the plaintiff drove her automobile to Florida. To this objection the Court mentioned that plaintiff's attorney would have an opportunity to point out any discrepancies in the defendant's argument. There was no proof that the plaintiff did not drive her car to Florida. She testified about getting a driver's license while in Florida. The argument of the plaintiff's attorney in reply to closing argument by defendant's attorney is not included in the transcript. We see no merit in either assignment of error No. VI or No. VII and they are both overruled.

Assignment of error No. VIII insists that the plaintiff is entitled to a new trial because of the following argument made by defendant's attorney to the jury:

"I just want to say this, Mr. Leslie, Mr. Ballard, Mr. Anderson, Mr. Cotton, all of you gentlemen, get back in the jury room and put yourself over there in the chair where Mr. Craig is, and you are going to reach in your pocket and pull out your billfold, and I want you to ask yourself; 'How much will I give this woman for what she has proven here in this particular case, just what is this worth, and I am going to believe about her loss of wages, and I am going to believe about all those injuries, and I am going to pay her for all those' now think about this, see what the case is worth?''

██ Since the transcript does not contain the argument made by plaintiff's attorney, either opening or closing; and since no objection was made by plaintiff's attorney at the time the alleged improper argument was made by defendant's attorney, it does not appear to this court that such argument, even if improper, affected the verdict of the jury and the outcome of the case. We hold it to be harmless error at most (T.C.A. Section 27-117) and we do not decide in this opinion whether such argument was or was not improper under the facts of the case.

All the assignments of error are therefore overruled and the judgment of the lower court is affirmed. The costs of this appeal will be taxed against the plaintiff-in-error.

Avery, P.J. (W.S.), and Bejach, J., concur.