James Rodney SMITH, Jr., and James Rodney Smith, Sr., Plaintiffs-Appellants,

v.

O. S. UFFELMAN, Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

June 29, 1973.

Certiorari Denied by Supreme Court
Feb. 19, 1974.

Thomas N. Bateman, Paul D. Welker, Clarksville, for plaintiffs-appellants.

Charles Hampton White and Charles G. Cornelius, Cornelius, Collins, Higgins & White, Nashville, for defendant-appellee.

## OPINION

SHRIVER, Presiding Judge.

This is a suit for personal injuries sustained by James Rodney Smith, Jr., a minor fifteen years of age, while operating a power lawn mower on the schoolyard of Houston County High School at Erin, Tennessee. James Rodney Smith, Sr., father of the minor son, brought suit for loss of services and medical expenses resulting from the accident to his son. The two cases were consolidated and tried together before Honorable J. H. Spencer, Circuit Judge, and a jury, and resulted in a verdict in favor of the plaintiff in each case and an award of $1.00 damages to each plaintiff against the defendant, O. S. Uffelman, Principal of the High School.

Suit was originally brought also against the Houston County Board of Education but, on motion, the suit against the Board was dismissed and no appeal was perfected from the action of the Court in that respect.

The declaration was in two counts, the first of which alleged common law negligence, while the second count of the amended declaration charged a violation of Section 50–711, T.C.A., which provides as follows:

"*50–711. Prohibited employment for children under sixteen.*—No minor under sixteen (16) years of age shall be employed, permitted, or suffered to work in or in connection with any manufacturing or mechanical establishment.

No minor under the age of sixteen (16) shall be employed, permitted or suffered to work in, about, or in connection with a bowling alley or in the operation of any power-driven machinery."

There was a general issue plea of not guilty.

## THE FACTS

In response to the motions for a new trial, the Trial Judge filed a Memorandum Opinion in which he discussed in detail the facts and the proceedings in these consolidated cases. As is stated in said Memorandum Opinion, James Rodney Smith, Jr.'s testimony was to the effect that on May 23, 1969 he was fifteen years of age and a student at Houston County High School. He said that he worked at the school at such odd jobs as picking up paper on the school ground and mowing the grass and that, as compensation for this work, he received free lunches at the school cafeteria. He said that he had been employed on occasions prior to May 23, 1969 in mowing the grass in the schoolyard; that on that date, after picking up paper in the yard for a while, he went to Mr. Pickens, one of the teachers in the school, to ask him for some gas for the lawn mower which was kept in the furnace room of the school; thereafter, he took the mower to a point on the bank near the highway and started mowing; that the grass was rather high and was slick and wet and that as he mowed on this steep bank, his foot slipped and went under the side of the mower, which was a rotary type power mower, with the result that he lost three toes on his foot and the fourth toe was badly injured. He testified about his movements after his foot was injured and the fact that he was carried to a doctor and then to a hospital in Clarksville. He further testified as to the pain resulting from this accident and the disability that he continued to suffer when walking and otherwise using his injured foot.

Mr. James Rodney Smith, Sr., the boy's father, testified, among other things, that on the night following the accident in the afternoon, he and his wife were visiting his son at the hospital in Clarksville when the defendant, Mr. Uffelman, came. He quoted the defendant as saying that he, Uffelman, was sorry about the accident and that the reason he had sent Jimmy out to cut the grass was that he knew he would do a good job and would come back in when he had finished.

Mr. Smith testified that he did not know that his son, Jimmy, was working for his

lunches until he learned it on that evening, and that he had given his son lunch money every week during the school year. When asked to state whether Mr. Uffelman said he was compensating Jimmy for cutting the grass, he answered: "Yes. He told me that night at the hospital that he was doing that. That's the only time that I ever knew."

He testified that his son's hospital bill was $169.00, the doctor's bill was $75.00, and that, in addition to this, there were bills for dressings and medicine and an ambulance bill of $30.00 for transporting his son to the hospital.

The defendant, O. S. Uffelman, testified that he had been Principal of the Houston County High School for about six years, prior to which time he was the Basketball Coach at the School.

When asked whether there were students in school receiving free lunches in 1969, he stated that there were probably 175 or 200 receiving such free lunches. He was then asked if they were required to do any work to be eligible for the lunches. He answered as follows:

"You can't force them, no, sir. That's usually volunteer. Right now it's volunteer. You cannot make them work for their lunch. I have about twenty working now and I'd say eighteen—fifteen to eighteen are working to pay for their lunch voluntarily. Now, back then I don't remember exactly how many I had."

When questioned about any conversation he had with the plaintiff, Jimmy Smith, on the day of the accident, he stated that Jimmy had come to his office twice to ask if he could mow the grass and that he, Uffelman, had told him "No". He went on to say that this was sometime following the lunch period, and he stated:

"Well, he came in again and I was real busy. We was taking senior exams and I was real busy trying to get everybody

in their station. And I told him to go see Mr. Brewer."

He stated that Mr. Brewer was the Agriculture Teacher and, when asked why he sent him to see Mr. Brewer, he answered:

"Well, Mr. Brewer usually saw after things of that nature, as to whether a machine was in operation or whether— different details around school, he would take care of them."

When the defendant was asked about his conversation at the hospital with Mr. Smith, Sr., and as to whether he made a statement to Mr. Smith about sending Jimmy out to do the job or mow the grass, he answered:

"I don't remember specifically whether I did or not, sir."

He was then asked whether any of the other students got free lunches for mowing the grass, and he testified:

"A. I couldn't say specifically. Probably, but I don't remember for sure.

Q. And if they had mowed the grass in 1969, who would have authorized them to mow the grass?

A. Probably I would have."

On cross-examination, he testified:

"Q. But Jimmy was working, was he not?

A. Jimmy was working for his lunch, yes, sir.

.    .    .    .    .    .

Q. And so, he was assigned different jobs and that was usually by you, with your knowledge?

A. Yes, sir."

On further cross-examination, he was asked and answered as follows:

"Q. Didn't you state in that particular deposition that you sent him to the Agriculture Teacher for the purpose of getting gasoline?

A. I don't remember whether I said it was for the purpose of getting gas or not, sir.

. . . . . .

Q. You knew that Jimmy worked there, did you not?

A. Yes, sir.

Q. That was with your knowledge?

A. Yes, sir.

Q. You stated that he was under your supervision when he worked?

A. Yes.

Q. And you don't deny the fact that Jimmy received compensation for his work, do you?

A. No, sir. If a free lunch is compensation, he got a free lunch—he got compensation, sir."

Mr. Brewer, the Agriculture Teacher, testified that the plaintiff was in his class at school where he instructed in the operation of power mowers such as the one involved here. He also stated that the mower in question was a new one that belonged to the school and was kept in the furnace room of the school building, and that plaintiff had come to his window while he was at his desk to ask for gasoline for the lawn mower and a few minutes later the accident in question occurred.

## ASSIGNMENTS OF ERROR

There are three assignments of error, as follows:

"I. The verdict is contrary to the law applicable to the case.

II. The verdict is so small and inadequate as to show passion, prejudice and caprice upon the part of the jury.

III. The Court erred in not granting the plaintiff's motion for per-emptory instructions."

## OUR CONCLUSIONS

The verdict of the jury was a general verdict and the record does not reflect whether the jury found the defendant guilty of common law negligence and, hence, liable for damages, or guilty of violating Section 50–711, T.C.A., and, hence, liable under said statute, or if they found him liable under both counts of the declaration.

■ The Trial Judge, in his Memorandum Opinion hereinabove referred to, expressed the view that the defendant was guilty of common law negligence in allowing a fifteen year old boy to take a power mower and undertake to mow the grass on a steep and slippery bank where an accident, such as the one here involved, might be expected to happen. We concur.

■ According to the testimony of Mr. Uffelman, himself, we are compelled to hold that there was material evidence to support a verdict under the second count of the declaration because he admitted that the fifteen year old boy was under his direction and control and that the mowing of the grass and the picking up of paper was compensated for with free lunches, that is, assuming that the mower in question is properly described as a power driven machine and, thus, within the terms of the statute, Section 50–711, T.C.A.

■ From an examination of several cases in Tennessee, as well as a number of cases in other jurisdictions, it seems clear that we must hold that the mower comes within the definition of the statute.

In the case of Swift v. Wimberly, 51 Tenn.App. 532, 370 S.W.2d 500, involving a go-cart, described as a small gasoline propelled riding device, on which a fourteen year old boy was riding when he was injured, the Court held that "mere permitting or suffering of a 14-year-old boy to work on defendants' go-carts violated child labor statutes, even though the boy was

never formally employed," and judgment for the injured boy was affirmed.

The question of remote contributory negligence is advanced by counsel for the defendant as explaining and supporting the verdict and judgment for $1.00. However, it should be pointed out that contributory negligence is not available as a defense to a suit for injuries sustained as a result of wrongful employment of a minor. See Schilly v. Baker, 184 Tenn. 654, 202 S.W.2d 348.

Thus, we think the verdict for the plaintiffs on the question of liability must be affirmed.

Assignment of Error No. 1: "The verdict is contrary to the law applicable to the case," is insufficient on its face for our consideration. General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655.

The third assignment is without merit and is overruled.

The second assignment that the verdict is so small and inadequate as to show passion, prejudice and caprice upon the part of the jury must be sustained.

As to the boy's injuries, they are rather serious and permanent and $1.00 does not represent any compensation for these injuries, although the jury found for the plaintiff and, thereby, settled the question of liability under either or both of the counts of the declaration since, as has been observed hereinabove, there is material substantial evidence to support a judgment under either count.

In the case of James Rodney Smith, Sr., there is uncontroverted evidence that the hospital bill amounted to $169.00, the doctor's bill $75.00, and the ambulance bill $30.00, in addition to some unspecified amount for medical supplies.

Having found that the defendant is liable, we can find no grounds upon which a judgment for $1.00 in favor of the father can be sustained. Kent v. Freeman, 48 Tenn.App. 218, 345 S.W.2d 252; McCullough v. Johnson Freight Lines, 202 Tenn. 596, 308 S.W.2d 387.

Although it is with some reluctance that we do so, we must remand this cause for a trial limited to a determination of the amount of damages in both cases.

Reversed and remanded.

PURYEAR and TODD, JJ., concur.