DALE VERRAN, by Next Friend v. TOWN OF GREENEVILLE.

Eastern Section.   January 29, 1927.

Petition for Certiorari denied by Supreme Court April 9, 1927.

1. **Negligence.** The negligence of a minor is ordinarily a question for the jury.
   In considering the capacity of a child to be guilty of active negligence that will bar his recovery, his intelligence, his capacity to appreciate danger, his age and his experience must all be considered, and these are questions for a jury to decide.

2. **Negligence. Evidence.** Evidence held to show child not guilty of contributory negligence.
   Where the evidence showed that a small boy had picked up a dynamite cap and that he stated that he knew it was dangerous but that he thought it could be shot off like a fire cracker, held that the question of his contributory negligence was a question for the jury.

3. **Municipal corporations.** A municipal corporation can not commit a nuisance in the performance of a governmental function.
   The construction of sewers by a town is a performance of a governmental function but the town is not permitted to escape liability if it commits a nuisance in the performance thereof.

4. **Negligence. Municipal corporations.** The leaving of a bright dynamite cap on the bank of a ditch held to be an act of negligence.
   In an action by an infant to recover damages for the loss of a hand caused by the explosion of a dynamite cap which the boy had picked up near a ditch which was being dug by the city, held that the leaving of a bright dynamite cap on the bank of a ditch, after the laborers had left, was an attractive nuisance, because boys are calculated to see the bright cap and

take it and tinker with it. Its potential capacity for danger is great and is equal to its power to attract. A case of liability was made out.

5. Negligence. Explosion of dynamite cap and injury of plaintiff held due to defendant's negligence although the explosion did not occur at the time the cap was picked up by the boy.

Where workmen digging a sewer left a dynamite cap on the bank of a ditch and it was picked up by a boy and placed in his pocket on Friday afternoon and on the following Sunday, the boy tried to explode the cap and received the injury complained of, held that there was no intervening cause interfering from the time the cap was picked up until it was exploded and the injury was a direct result of defendant's negligence.

6. Damages. $4000 held excessive verdict for the loss of three fingers on boy's hand.

In view of the fact that under the Compensation Laws an adult who loses a whole hand may recover only $3000, held that a $4000 verdict for the loss of three fingers was excessive and a remittitur of $1000 was ordered.

Appeal in error from Circuit Court, Greene County; Hon. D. A. Vines, Judge.

Remittitur suggested and affirmed.

J. E. Biddle and H. C. Haynes, of Greeneville, for plaintiff in error.

Susong, Susong and Parvin, of Greeneville, for defendant in error.

PORTRUM, J. This is an action brought in plaintiff's behalf in which he sues, by next friend, the town of Greeneville in the sum of five thousand dollars, ($5,000) damages, for an injury sustained, on the 4th day of January, 1924, when said town of Greeneville was engaged in the construction of sanitary sewers.

The declaration avers that the defendant, town of Greeneville, was engaged in building a sewer system along Park street, and that the employees doing the work carelessly and negligently left, when they quit work, a dynamite cap lying on the dirt near the ditch; that this cap was an attractive and bright object, and especially attractive to a child; that on the evening of the above date plaintiff, Dale Verran, a minor about twelve years of age, was returning from school to his father's home, situated on Park and Lake streets, and while going this way saw a dynamite cap lying exposed and near the ditch, and that he stepped over and got the cap, which was about two inches in length, and about one-fourth of an inch in diameter, covered with copper, and took the cap home with him; that he knew nothing of the dangerous nature of the cap, that no one had warned him about it, and on January 6, 1924, Sunday, he brought the cap in contact with a lighted match, and the cap exploded, tearing away the two middle fingers and thumb on his left hand; that it also lacerated, bruised, cut and mangled and otherwise injured the two remaining fingers and the remainder of his hand, as well as cutting, maiming, bruising and injuring his

arm, his face, and other portions of his body; that as a consequence of this he was taken to the hospital for surgical attention. By reason of this injury he has suffered great physical pain and mental anguish, and had a loss of three or four weeks of school, as well as being left inefficient, and in a practically helpless condition; that he has been forced to pay for medical attention, one hundred dollars ($100), actual cash.

The declaration avers that plaintiff is permanently injured, and his capacity for labor, for business, and for enjoyment of life is permanently and seriously impaired. Defendant, town of Greeneville, is charged with negligence in permitting and allowing this cap to be left in a street, of easy access to children. The basis of this action is that of an attractive nuisance.

Defendant, town of Greeneville, originally demurred to this declaration, said demurrer being based upon one ground; viz., that at the time of plaintiff's injury the town was engaged in a governmental or legislative work in that the said town of Greeneville was building sanitary sewers, and for this reason it is not liable. Said demurrer was overruled by the court. Defendant, town of Greeneville, thereupon filed pleas of:

1.    Not guilty.

2.    That at the time of the injury the town was engaged in a governmental work, and therefore, not liable.

This case has been twice tried. The first jury awarded damages in the sum of two thousand dollars ($2,000), and the last jury awarded damages in the sum of five thousand dollars ($5000), which amount was subsequently abated by the Circuit Judge to the extent of one thousand dollars ($1,000), making the judgment four thousand dollars ($4,000).

Motion for a new trial was made and overruled by the court, when an appeal was prayed to the Court of Appeals and granted, and which in due time was perfected. The assignments of error are here set out together because not treated in their consecutive order in the brief of counsel nor in this opinion. And by stating the assignments together a clear idea of all the questions raised is given.

"1 and 3: The court erred in refusing and declining to sustain defendant's demurrer to the declaration; and in refusing peremptorily to instruct the jury because the town was engaged in governmental work and is not liable to plaintiff.

"2. The court likewise erred in refusing to grant defendant's motion for a new trial on the ground that there was no evidence to support the verdict.

"4. The court likewise erred in refusing peremptorily to instruct the jury that the plaintiff, Dale Verran, knew that this cap was dangerous, testified that it was dangerous, and knew it would

explode and hurt him, and that he had been warned by his father not to pick up or play with caps of this kind, and yet in the face of knowledge and this warning he picked this cap up and exploded it thereby contributing proximately and directly to his own hurt and injury and can not recover, and the court erred in not peremptorily instructing the jury that this was a bar to plaintiff's action.

"5. The court also erred in refusing peremptorily to instruct the jury that plaintiff having picked up this cap on Friday, as he testifies, and having carried it until Sunday when he exploded it, could not recover for the injuries sustained therefrom, because of the lapse of time intervening, and because the casual connection would be broken. Plaintiff testified that he carried this cap in his sweater pocket, and that he took his sweater off and put it on again on Sunday morning, and found the cap and exploded it, thus causing the injury, and the court should have instructed the jury that the causal connection had been broken, and that defendant, town of Greeneville, was not liable to plaintiff for this reason.

"6. The court likewise erred in only abating the verdict of the jury to the extent of one thousand dollars ($1,000), and rendering a judgment against defendant, town of Greeneville, for four thousand dollars ($4,000). The verdict of the jury, and the judgment after abatement, is excessive."

The town of Greeneville raises three defenses under its assignments of error, as well as one going to the quantum of damages. counsel stated that they would treat the questions raised in the order of their relative importance. The court will follow and treat first the question of contributory negligence.

It is conceded by counsel, the plaintiff being a minor, the question of his negligence is ordinarily a question for the jury, but where there is no dispute about the circumstances, and it is shown the minor understood the danger attendant upon the matter, and appreciated it, and having been warned by his father beforehand, then the question is one for the court.

The child, who appears to be a frail boy of about ten years of age, was examined at great length, and during his testimony and the excitement of the ordeal he was made sick by the strain which he underwent on the stand; the court adjourned a short time to allow the boy to recover, and he was again examined at length. No extended quotation of his testimony will be made, but from the testimony here quoted, which covers the ground, one can see that the examination was grilling, and can give such weight to the statements of a child as one should under such circumstances.

In regard to this matter the plaintiff states as follows:

"Q. And you knew they would go off? (dynamite caps)    A. Yes, but I thought it had to have something to put it off.

"Q. You knew it had to have fire?  A.  Have to have electricity.

"Q. You knew they would go off?  A. Yes sir.

"Q. And knew they were dangerous?  A. Yes sir.

"Q. And nevertheless you knew they were dangerous and yet you picked this one up?  A. Yes sir.

"Q. You wanted to hear it go off?  A.  I thought I could get away from it and I wanted to hear it.

"Q. You wanted to hear it make a noise?  A.  Yes sir.

"Q. And you took it out to hear it make a noise?  A.  Yes sir.

"Q. And your brother went with you?  A.  I told him to stand back.

"Q. What did you say that for?  A.  I thought I could get away but he might get hurt.

"Q. You told him to stand back you thought it would hurt him?  A.  I told him to stand back so I could run.

"Q. You knew it would hurt you?  A.  I didn't think about it then.

"Q. You knew it was dangerous, didn't you?  A. Yes sir, I knowed it was dangerous.

"Q. And you say you had seen them shoot off?  A. Yes sir.

"Q. And you testified before you thought it was dangerous?  A. Yes sir.

"Q. And you testified before you thought you could turn it loose?  A. Yes sir, but it stuck to my hand.

"Q. And that is the reason you didn't get it loose?  A.  Yes sir.

"Q. In other words, you meant to strike it off and throw it down?  A. Yes sir, I thought I would light it and throw it down.

"Q. And you knew if you lit it and didn't throw it down it would burst?  A. I didn't know whether it would hurt or not, I thought it would just spew.

"Q. Didn't you say you knew it was dangerous and would hurt you in last examination?  A. Yes sir, but I thought you had to have something to make it go off.

"Q. You knew you had to hit it and touch it with fire?  A. Yes sir, but I thought I could get away.

"Q. And it went off too quick for you to get away?  A.  Yes sir.

"Q. Quicker than you expected?  A. Yes sir."

In addition it is proven that the father warned the boy not to go about the street work because it was dangerous. He told his younger brother to stand back out of danger in order that he might touch it off and escape the danger by running unimpeded by his younger brother. The fact that a dynamite cap is dangerous and is known to be dangerous by a boy and that it will explode makes it

all the more attractive to a boy. And if a boy thinks he can explode it without injury to himself, like he can a cannon cracker, he is greatly tempted to do so. So then if he thought this could be done, as this boy testified he did, then he did not appreciate the real danger for the reason that it is impossible for a child to set off a dynamite cap and cast it from him and escape injury.

In considering the capacity of a child to be guilty of active negligence that will bar his recovery, his intelligence, his capacity to appreciate danger, his age and his experience must all be considered. Manning v. American Clothing Co., 147 Tenn., 282, 147 S. W., 103. To quote from the above case:

"In Rolin, by Next Friend, v. R. J. Reynolds Tobacco Co., 141 N. C., 300, 53 S. E., 891, 7 L. R. A. (N. S.), 335, 8 Ann. Cas., 638, it was held that the question of whether a child is guilty of contributory negligence in any given case is a question for the jury, in view of his age, intelligence, knowledge of the surroundings, and capacity to know and appreciate the danger.

"To the same effect is the rule announced in 29 Cyc., 540.

"In 20 R. C. L., p. 127, section 106, it is said that children between the ages of seven and fourteen years may or may not be guilty of contributory negligence, depending upon their mental development and other circumstances; the presumption being that incapacity continues during this period.

"We think the question of plaintiff in error's contributory negligence in this case was one for the jury, and could not be determined, as a matter of law, by the court."

This is the rule laid down in other Tennessee cases. Townsley v. Yellow Cab Co., 145 Tenn., 94, 237 S. W., 58; Wells v. McNutt, 136 Tenn., 276, 189 S. W., 365.

The question of this boy's capacity to appreciate the danger under the circumstances as shown was a question for the jury; and his statements of what he knew about the danger of a cap is not conclusive upon him in view of his age, intelligence, health and experience. In other words, he says he knew it was dangerous when, as a matter of fact, there is evidence indicating that he did not appreciate or know the danger. This assignment of error is overruled.

The next question treated by counsel is the question of the character of the work, and whether or not it is governmental. At the time of the injury the town of Greeneville was installing sanitary sewers in certain localities among which was the one at the point where plaintiff was injured. At this point a ditch had been dug, and the caps were left exposed at or near the ditch at an easy access to passers-by.

A long and able argument and review of authorities are presented by counsel in support of his contention as to the work being govern-

mental in character, and for this reason the town is not liable for plaintiff's injury. The construction of the sewers by the town is a performance of a governmental function but the town is not permitted to perform governmental functions of this character if it commits a nuisance in the performance thereof and escape liability. Knoxville v. Klasing, 111 Tenn., 134; 76 S. W., 814; Chattanooga v. Reed, 103 Tenn., 615, 53 S. W., 937; Kolb v. Knoxville, 111 Tenn., 311, 76 S. W., 823.

But assuming that the work is governmental, then counsel for defendant in error has this to say:

"The defendant in error admits that there is no direct authority in this State as to whether the building or construction of sanitary sewers is a governmental work, and we might here enter into a long discussion with citation of unending lines of cases on this concrete question; but whether the defendant in error, town of Greeneville, was engaged in governmental work in constructing this sewer, an authority going to this one question would not settle the case.

"Even if the defendant in error, town of Greeneville, had been engaged in governmental work, it is now well-settled by our own Tennessee courts (regardless of the unending medley of decisions of other States pro and con) that a municipal corporation is not allowed to create or commit a nuisance in the discharge of its governmental duties; and, that the town is liable in constructing a sewer, if it is done negligently and in such a manner as to commit a nuisance."

Then passing to the question of attractive nuisance, the authorities agreed that a city in pursuing a public work is not privileged to commit a nuisance to the special injury of the citizens and if it does it must, as would a private individual, respond in damages therefor. Chattanooga v. Bowling, 101 Tenn., 345, 47 S. W., 700.

"This court is committed to the doctrine of the liability of the owner for the maintenance of negligently exposed dangerous machinery, attractive to a child, in the exercise of his natural instinct or curiosity injured thereby, even though the machinery was on the owner's private premises. Whirley v. Whiteman, 1 Head, 610.

"The principle was applied by this court to a turn-table, so maintained, in Railroad v. Cargile, 105 Tenn., 628, 59 S. W., 141, which cites as authority the 'turn-table case' of Sioux City, etc., R. Co. v. Stout, 17 Wall., 657, 21, L. Ed., 745, which cited and relied on the case of Lynch v. Nurdin, 1 Ad. & E., N. S., 29, 1 Q. B., 30, 41 E. C. L., 422, as did also our case of Whirley v. Whiteman, supra.

"The English courts have recently approved Lynch v. Nurdin, and carried forward its doctrine in an application of same to a turn-table case (Cooke v. Midland, etc., R. C. (1909), A. C., 229,

5 Ann. Cas., 557) ; while the Supreme Court of the United States has adhered to the doctrine of the Stout case, and evinced its willingness to advance its application to case of attractive nuisance in the form of a slack pit, beneath the surface of which the slack was burning. Mr. Justice Harlan, in the opinion said: 'If the company left its slack pit without a fence around it, or anything to give warning of its really dangerous condition, and knew or had reason to believe, that it was in a place where it would attract the interest or curiosity of passers-by, can the plaintiff, a boy of tender years, be regarded as a mere trespasser, for whose safety and protection while on the premises in question, against the unseen danger referred to, the railroad company was under no duty or obligation whatever to make provision?' Union Pac. R. Co. v. McDonald, 152 U. S., 262, 14 Sup. Ct., 619, 38, L. Ed., 434, holding liability. Doyle v. Chattanooga, 128 Tenn., 442, 161 S. W., 997.

"The court in the case of the City of Nashville v. Mason, 137 Tenn., 172, 192 S. W., 915, held that the gathering of garbage was a duty owed by the municipality to the public and was governmental, but that in the discharge of a governmental duty it was not permitted to commit a nuisance."

The courts have recently held that the placing of a ten-ton roller on the streets and near a street-car line, making a dangerous obstruction and which caused an injury to the conductor taking up fares on the street-car, was a temporary nuisance and the city was liable for the act of its employees to the injured conductor, because of the placing of the roller in such a way as to become a dangerous obstruction and a nuisance. City of Knoxville v. Lively, 141 Tenn., 27, 206 S. W., 180.

There is a distinction to be drawn between non-feasance and active negligence. The case of Vance v. Shelby County, 152 Tenn., 146, 273 S. W., 557, is not in point for this reason: In that case the court held that the burning of a bridge and leaving it unguarded at night, and by reason of which a person traveling in an automobile in the dark was precipitated into the cavern, was not a nuisance. The act of building a bridge was a part of the work and necessary to the construction of the road.

We hold that leaving a bright dynamite cap on the bank of a ditch, after the laborers had left, was an attractive nuisance, because boys are calculated to see the bright cap and to take it and tinker with it. Its potential capacity for danger is great and is equal to its power to attract. A case of liability was made out.

"The central idea is that children are liable always to be upon the public streets, and also are liable to turn aside from traveling and play, or meddle with attractive things left thereon; that a reasonable man must bear this fact in mind, and hence may not

negligently or willfully place upon the street a dangerous trap, well calculated to arouse the admiration or curiosity of a child, and, when it has accomplished the natural result which might be reasonably expected escape the consequences by saying that the injured child should not have yielded to his curiosity. In accord are the later cases of Secard v. Lighting Co., 147 Wis., 614, 133 N. W., 45; Kelly v. Southern Wis. R. Co., 152 Wis., 328, 140 N. W., 60, 44 L. R. A. (N. S.), 487; Kessler v. Berger, 205 Pa., 289, 54 Alt., 887, 61 L. R. A., 611; Doyle v. Chattanooga, supra.''

An able argument has been made here upon the question of causal connection and unforeseen consequences. It is claimed the connection was broken since the boy picked the cap up on Friday evening, put it in his sweater pocket and went home, pulled off his sweater and hung it up and did not put it on again until Sunday morning when he went out with his little brother and attempted to light it off with a match, and was injured. We cannot see how the causal connection was broken because of the delay. If he had picked it up, put it in his pocket and taken it out immediately and been injured, the injury would have been a natural consequence of the negligence; the delay did not make it any less a consequence of the negligence. And the city was expected to anticipate that should the caps be picked up by a small boy that it would cause injury sooner or later. It can make no difference to the rights of the city whether the injury occurred on Friday or Sunday. This case is to be distinguished from the case of Jacobs v. New York, N. H. & H. R. Co., 40 L. R. A. (N. S.), 41. In this case the city is bound to anticipate injury from the promiscuous scattering of dynamite caps, at a later time than the picking up of the cap as well as at the time when the cap is picked up. If delay in exploding is to excuse a city because it is not expected to anticipate the delay, then just when will the city be liable—at the time, an hour later, or two and a half days later?

We can find no intervening cause, no other person nor instrumentality had a hand, or interfered from the time the cap was picked up until it was exploded.

There is yet for consideration, excessiveness in the damage allowed. At the first trial the jury gave $2,000 as damage, and in this trial the jury gave $5,000. The trial judge, upon a motion for a new trial sustained the ground that the verdict was so excessive so as to evince passion, caprice and prejudice on the part of the jury, but he only reduced the verdict $1,000. The child was out of school a few weeks, lost three fingers, and his health was probably temporarily impaired. In view of these facts and in view of the fact that under our compensation laws, an adult who loses a whole hand may recover only about $3,000, we conclude that the

verdict is excessive and suggest a remittitur of $1,000, and if accepted, all other assignments of error are overruled and the case is affirmed at the cost of the defendant in error; if not accepted, a new trial is ordered.

Snodgrass and Thompson, JJ., concur.