JAMES THOMAS, Plaintiff in Error, v. JOHN HENRY HARPER, b/n/f JOHN W. HARPER, Defendant in Error.

JAMES THOMAS, Plaintiff in Error, v. JOHN W. HARPER, Defendant in Error.—385 S.W.(2d) 130.

Middle Section, at Nashville. June 26, 1964.

Certiorari Denied by Supreme Court October 30, 1964.

552

554

James Donoho, Hartsville, Solon Fitzpatrick, Carthage, for plaintiff in error.

Richard A. Jones, Nashville, for defendant in error.

HUMPHREYS, J. John Henry Harper, a minor, suing by his father, Johnny W. Harper, as next friend, recovered a judgment against James Thomas, for $10,000.00 for personal injuries. The father also recovered a judgment against James Thomas for $5,000.00 for medical and other expenses, and for loss of his son's services. Plaintiff-in-error has appealed from both judgments and assigned some fourteen errors.

While there was no argument of this appeal on account of illness of counsel for defendants-in-error, counsel for plaintiff-in-error stated that the fifteen errors assigned presented three primary categories of propositions for reversal. These were said to be (1) that the evidence in

the case, even when construed in the light most favorable to John Henry established his personal injuries were occasioned by an intervening, independent act on his part, which was the proximate cause of his injuries so that neither he nor his father could recover. (2) That the court erred in instructing the jury with respect to the law on intervening acts of plaintiffs and proximate cause, and committed other harmful errors in charging the jury. (3) The court committed errors in allowing introduction of certain evidence.

In view of these contentions we have reviewed the evidence in accordance with the rule in Poole v. First National Bank of Smyrna, 29 Tenn. 327, 196 S. W. (2d) 563, which requires we take as true John Henry's testimony, and find the record reflects the following:

On the afternoon of May 6, 1961, at approximately 4:30 P.M., John Henry Harper, approximately twelve years old, rode his bicycle down Claiborne Lane which intersects with the west side of Halltown Road. There he stopped and started up again, and rode into Halltown Road and turned to his right or in a southerly direction on his own side of the road, intending to ride down to a service station where his father worked. Almost immediately after he had entered into Halltown Road and while he was on his right-hand side of the road, plaintiff-in-error ran over him with a taxicab. The proof is that skid marks laid down by the taxicab commenced about the center of Halltown Road, continued over a total length of some 105 feet and veered to the taxicab driver's left—or to the west side of the road—and ended in the gravel on the west side, the same side Claiborne Lane intersects with and the same side John Henry said he was struck on. Skid marks were not laid down over the entire 105 feet.

At the point of the intersection of Claiborne Lane and Halltown Road there was a ten foot gap in the skid marks as though plaintiff-in-error had let off his brake at this place. An expert witness, testifying from skid tests made at the place of the accident, said that in his opinion the taxicab was being driven at least forty-five miles per hour at the time. The impact was evidently severe as the boy suffered a compound fracture of both bones below the knee of his left leg, and a compound fracture of the main bone above the knee of that leg. He was cut and abraded about his head and body. He suffered physical pain. He was confined in a hospital for two months and six days. Thereafter, he was confined to his home for a period in excess of a year. He wore a plaster cast from his toes to his chest for approximately seven months. When the first cast was removed a smaller cast was put on the leg for an additional period of time. Following the removal of the cast he was able to get about on crutches. When the crutches were no longer necessary, he was able to hobble about and at the time of the trial had a decided limp. The evidence is his left leg will always remain approximately one and one-half inches shorter than the other and that with this shortening of the leg and the resulting shift of the spine traumatic arthritis of the spine can be expected to develop earlier in life than in the normal aging process.

Johnny W. Harper, the father, incurred doctors' bills, medical bills, and other special damages of approximately $1,700.00. Because of the injuries John Henry Harper missed one full year of school. Whereas prior to the accident he had always been an active, healthy boy, helping his father farm and participating in sports and athletics, since the accident and because of it he has been unable to do these things.

█ In view of this evidence plaintiff-in-error was not entitled to a directed verdict either on the proposition there was no evidence of negligence on his part or on the proposition John Henry Harper committed an independent, intervening act which caused his injuries and for which plaintiff-in-error would not be liable.

The allegations of negligence in the declarations are that plaintiff-in-error "drove his taxicab north on Halltown Road so recklessly, negligently and wantonly that he lost control of the operation of the same and ran into, upon and over the plaintiff."

"Plaintiff avers that at said time and place the defendant was driving at an excessive rate of speed, that he was not keeping a proper lookout ahead and that he was driving his said taxicab negligently and ran the same on the left side of said road when he struck plaintiff with the front of his automobile. * * *"

It cannot be denied this evidence as we have gleaned it from the record in accordance with the admonishments of the Poole rule tends to prove these allegations, and makes out a case for defendants-in-error.

We are aware there is countervailing proof. The plaintiff-in-error had an entirely different theory as to how the collision occurred. His testimony was that at a time while he was driving down the road with his automobile under control and keeping a lookout ahead, John Henry, rode his bicycle suddenly right into the path of his taxicab so that it was impossible for him to avoid the collision. That weeds and bushes along the side of Claiborne Lane at its intersection with Halltown Road made it impossible to see any distance up Claiborne Lane until you got practically to the intersection, so that

he had no warning the boy was about to ride out of the lane in front of him and so could do nothing to avoid the collision.

■ If the jury had accepted and acted on plaintiff-in-error's evidence as thus stated, the twelve year old plaintiff, even if not accountable for contributory negligence on account of his age, could not recover, since his own act would have been the proximate cause of his injury. Coleman v. Byrnes, 34 Tenn.App. 680, 693, 694, 242 S.W.(2d) 85. However, since the jury rejected this evidence we cannot consider it in passing on the motions for directed verdicts. Poole v. First Natl. Bank of Smyrna, supra.

■ The second assignment of error is that the verdicts are excessive. We do not think the assignment good. The actual damages of the father total $1,719.35 and he proved the boy was of some help to him in farming. The testimony as we have outlined it above with respect to the nature of the injuries and the condition in which John Henry is now and will be the rest of his life, certainly indicates the verdict is not so excessive in his behalf as to indicate passion, prejudice, or caprice, or to warrant the exercise of the remittitur power of the Circuit Court or of this Court. It is settled law that the amount of the verdict for personal injuries is primarily for the jury to determine, and, next to the jury, the most competent person to pass upon the matter is the trial judge, and that this Court will not ordinarily interfere unless there is some evidence of passion, prejudice, or unaccountable caprice, or clear abuse of discretion, or the verdict is so far beyond reason as to be a palpable injustice. Gibson County Elec. Membership Corp. v. Hall, 32 Tenn.App. 394, 222 S.W.(2d) 689; Carman v. Huff, 32 Tenn.App. 687, 227 S.W.(2d) 780; Flexer v.

Crawley, 37 Tenn. App. 639, 269 S.W.(2d) 598; Board of Mayor & Aldermen of Covington v. Moore, 33 Tenn.App. 561, 232 S.W.(2d) 410; Kent v. Freeman, 48 Tenn.App. 218, 345 S.W.(2d) 252.

The third assignment is that the court erred in allowing Lt. Elmer Craig to testify over the objection of plaintiff-in-error as an expert witness on behalf of defendants-in-error in the trial, that he had made certain tests at the place of the collision and in his opinion the defendant's automobile was being driven at least forty-five miles per hour at the time it left the skid marks extending over a total length of some 105 feet. This testimony was objected to on the grounds a proper foundation had not been laid for the giving of the opinion; the road surface was not shown to be the same as at the time the accident happened; and there was a difference in the temperature at the time of the two tests.

The record indicates that at the time of the objection the trial court expressed the opinion the objection went to the weight of the testimony and not the competency of it, and that he would allow the witness to testify, and allow counsel for defendant to attack the opinion by cross-examining the witness with respect to the items which it was claimed rendered his opinion valueless. And this was fully done.

Defendants-in-error defend the action of the trial court in permitting this evidence. Monday v. Millsaps, 37 Tenn. App. 371, 264 S.W.(2d) 6 (1953); Cheek v. Fox, 7 Tenn. Civ.App. 160; 20 Am.Jur. 805, p. 678; 32 C.J.S. Evidence sec. 533, p. 236; Vol. 9C Blashfield Cyclopedia of Automobile Law and Practice sec 6238, p. 416.

■ ■ In Monday v. Millsaps, this Court speaking through one of its most experienced judges, Peabody

Howard, J., sustained the admissibility of testimony of an expert witness regarding minimum speeds from skid marks. He said: "Under the circumstances we find no merit in this assignment, as the qualification of a witness as an expert is a matter largely within the discretion of the trial court, whose ruling in respect thereto will not be reversed upon appeal unless clearly erroneous and unless there was an abuse of discretion. McElroy v. State, 146 Tenn. 442, 242 S.W. 883; Keys v. Keys, 23 Tenn.App. 188, 129 S.W.(2d) 1103". The writer then goes on to say: "The law is well settled that an expert witness may give his opinion as to the speed of an automobile from the length of its skid marks." Monday v. Millsaps, 37 Tenn. App. 393, 264 S.W.(2d) 16.

 This being the law, and the trial court's action not being clearly erroneous, we find no reversible error.

The fourth error assigned is that the trial court should not have permitted counsel for defendants-in-error to read Chapter 12-501 of the ordinances of the City of Hartsville, Tennessee.

The ordinance in question provides: "It shall be unlawful for any person to operate or drive a motor vehicle on any highway or street of this town in excess of thirty miles per hour, except the speed limit on Highway 25, 40 M.P.H."

The record reflects the following transpired with respect to the introduction and reading of the ordinance:

"MR. WARFIELD: Mrs. Cecil Harper is in the office. She said she would rather not have to come up here. She is the only one in the office, and I have the ordinance which we would like to introduce.

562

"THE COURT: Well, submit it to Counsel for the Defense.

"MR. WARFIELD: Yes, sir. (shows it to opposing counsel)

"THE COURT: (waits for them to get through with it)

"MR. WARFIELD: We would like to read into the record, if the Court please, Chapter 501.

"MR. FITZPATRICK: We object to it. We don't know what is in it.

"THE COURT: Let me see it. (He takes the ordinance.) I believe that is the town ordinance. I will let you read it.

"MR. FITZPATRICK: We object to it because it doesn't say when it was enacted.

"THE COURT: All right.

"MR. WARFIELD: We don't want any error in the record, if it please the Court, and Mrs. Harper just said she was the only lady down there, and said she would rather not have to come. This bears the date of 1958. Really, we don't mind Mr. Donoho telling us that this is wrong.

"THE COURT: Well, I—I don't—I am willing for you to read it. I don't—I don't require you to, but I am willing for you to.

"MR. WARFIELD: This is section 12-501:

"It shall be unlawful for any person to operate or drive a motor vehicle on any highway, or street, of

this town, in excess of 30 mph except the speed limit on Highway 25 40 mph.'' Tr. p. 71-72.

██ ██ It will be observed counsel for defendant objected to the ordinance only on the grounds: (1) That counsel did not know what was in the ordinance and (2) because the ordinance did not state when it was enacted. Against this are the facts outlined above. These facts show the ordinance book was submitted to counsel for defense. They examined it, the trial court examined it, counsel for plaintiff stated the custodian, Mrs. Cecil Harper, was available to prove the ordinance if that was required but she preferred not to come. In view of all this, we think the assignment is bad. The ordinance was not inadmissible on the grounds of the objection and defense is limited here to these.

██ ██ However, there is a more compelling reason why the assignment is not good, and that is, under T.C.A. sec. 27-117, the harmless error statute, the assignment cannot be sustained. In order for any error to be available for reversal in this Court, it must affirmatively appear, after an examination of the entire record in the cause, the error affected the results of the trial. We cannot say that in this case since there was sufficient, competent evidence in the proof of the length of the skid marks and their location, and the testimony of the plaintiff John Henry Harper, to make out the case under the common law count and sustain the general verdict, without the benefit of this evidence. We think the probative force and value of the testimony with respect to the skid marks, the point of their origin and their length and the place where they left the road was without doubt the compelling and determinative factor in the jury's finding

against defendant and this evidence makes out plaintiff's case, without the ordinance.

■ The fifth assignment is the court erred in permitting the defendant to be cross-examined about his knowledge of a thirty mile per hour speed limit sign erected on the Halltown Road near the scene.

We fail to find any error in this action of the court. Certainly defendant's own knowledge of a posted speed limit prior to an accident is a proper inquiry on cross-examination. If he expected to contend the road sign was unauthorized and did not regulate speed along this highway he should have said something about this at the time.

■ T.C.A. sec. 59-853, among other things authorizes the legislative bodies of towns and cities to prescribe speed limits within certain areas or zones or on designated highways, avenues, streets in their respective jurisdictions, and to erect appropriate signs and traffic signals. Where the proof is there was a speed sign, and no question made with respect to its regularity, the presumption of regularity and compliance with law which appertains until the contrary is shown would make the fact of its presence admissible. Rutherford v. Nashville, 168 Tenn. 499, 79 S.W.(2d) 581.

■ The seventh assignment is that the court erred in giving in charge T.C.A. sec. 59-858, the reckless driving statute. It being the insistence in this regard that though the statute was pleaded, there was no evidence to warrant the giving of it in charge. T.C.A. sec. 59-858 provides: "Reckless Driving.—(a) Any person who drives any vehicle in willful or wanton disregard for the safety of person or property is guilty of reckless driving."

■ We think the proof warranted the trial judge in giving the statute in charge. It was for the jury to de-

termine whether, by travelling through a populated section of the town at forty-five miles per hour, along a street with a thirty mile speed sign, and proceeding in the center of the road rather than on the proper righthand side, with so little control over the automobile that it covered a total distance of 95 feet skidding and ended up on the wrong side of the road before it could be stopped, constituted a violation of this statute.

■ But again we must point out that in any event, inasmuch as there was no claim for punitive damages based on wilful or wanton conduct or violation of this statute and no verdict thereon, the giving of it in charge, at best, only placed on the plaintiffs below the more difficult burden of showing some wilfulness or wantonness, and all this under the harmless error statutes cannot be considered here for reversal.

■■ A part of this assignment of error complains that the trial court omitted to explain in detail that sec. 12-501 was a city ordinance of the Town of Hartsville and not a statute. We do not think this objection is good. The declaration alleged a violation of city ordinance 12-501 and the discussion we have heretofore quoted took place in the presence of the jury. The jury was not misled with respect to this matter. If defense counsel thought this a possibility he should have corrected the situation by special request.

The eighth assignment of error complains that the judge took from the jury the question of plaintiff John Henry's contributory negligency by charging the jury the following:

"I charge you that under Tennessee law, a child between the ages of 7 and 14 years of age is presumed

incapable of exercising judgment and discretion requisite to charge him with contributory negligence. But such presumption is *prima facie,* only, and can be rebutted by evidence of capacity, and the burden of proving such capacity on the part of the child rests with the party that set up the defense of contributory negligence.

"I charge you further that in this case there has been no proof of special capacity on the part of the child, and, therefore, this Plaintiff cannot be charged with contributory negligence so as to either bar his recovery or to diminish the amount of his damages, unless the Plaintiff brought about an intervening cause by his action of riding out onto the highway on his bicycle, as he did." Bill of Exceptions, p. 101-102

Plaintiff-in-error contends on authority of Taylor v. Robertson, Admr., 12 Tenn. App. 320; Townsley v. Yellow Cab Co., 145 Tenn. 91, 237 S.W. 58; Manning v. American Clothing Co., 147 Tenn. 274, 247 S.W. 103; Verran v. Town of Greeneville, 4 Tenn.App. 422, and other cases that this was an erroneous instruction in that the trial judge should have left it to the jury under the facts and circumstances of the case to determine the minor's capacity. Against this, defendants-in-error contend there was no material evidence to be considered by the jury on the issue of capacity and therefore the charge was correct. They rely on Hadley v. Morris, 35 Tenn. App. 534, 349 S.W.(2d) 295.

In Bailey v. Williams, 48 Tenn.App. 320, 325, 346 S.W. (2d) 285, we find the following statement:

"Under the cases cited the question whether the presumption of incapacity has been overcome by proof

is generally one of fact for the jury. Where, however, the proof is undisputed and so clear that only one inference can reasonably be drawn therefrom, whether the child had capacity to exercise and exercised such care as might reasonably be expected of a child of his age, capacity and experience in the given situation becomes a question of law for the court. 38 Am.Jur. 1066, Negligence, Section 357.'' 48 Tenn.App. 325, 346 S.W.(2d) 288.

■ From this it is clear the burden of showing ''capacity'' on the part of the minor child is upon the party who would charge him with contributory negligence. So that the questions which here arise are, what must be shown to show ''capacity'', and was this shown.

In Townsley v. Yellow Cab Co., 145 Tenn. 91, 95, 237 S.W. 58, 59, the Supreme Court quoted with approval from Wells v. McNutt, 136 Tenn. 274, 189 S.W.(2d) 365, ''that it is therefore a question of fact, to be determined by the jury, whether, in a given case, the child is in the exercise of proper care, *his tender years, his intelligence or want of it, and all of the circumstances by which he was surrounded being taken into account.''*

In Marion County v. Cantrell, 166 Tenn. 358, 362, 61 S.W.(2d) 477, ''capacity'' was said to be determined in the light these same factors with age, intelligence, and the circumstances and conditions surrounding him being taken into account.

In Verran v. Town of Greeneville, the question is discussed and we there find the test is stated to be ''his intelligence, his capacity to appreciate danger, his age, and his experience must all be considered.''

Manning v. American Clothing Co., 147 Tenn. 282, 247 S.W. 105, states that the question is for the jury, "in view of his age, intelligence, knowledge of the surroundings, and capacity to know and appreciate the danger." The opinion in that case also quotes from 20 R.C.L. 127, sec. 106, that children may or may not be guilty of contributory negligence, "depending upon their mental development and other circumstances."

Was there any material evidence to make a jury question as to the "capacity" of John Henry? We think there is such evidence.

At the age of twelve, John Henry was in the seventh grade. He assisted his father in the fields, plowing and doing other work. He played games and participated in sports with other children. He underwent a rather stiff cross-examination which brought before the court and jury his intelligence and alertness, or lack of it. While it is true John Henry learned to ride his bicycle out on country roads, it is also true that he had been living in the immediate neighborhood of the intersection of Claiborne Lane and Halltown Road for at least two weeks, and was familiar enough with the surroundings to start out to go to the filling station where his father worked.

In consideration of all these facts, which have some relevancy and materiality on the question of the capacity of John Henry to understand and know the consequences of riding his bicycle suddenly out into a traveled highway and possibly into the path of an oncoming automobile, we think there was material evidence to be considered on the subject of John Henry's "capacity" and the instruction of the court in regard thereto was erroneous.

But, the question arises even though this be the case,

is the plaintiff-in-error entitled to a reversal in view of T.C.A. secs. 27-116 and 27-117.

T.C.A. sec. 27-116 provides that no judgment shall be reversed in the appellate court, *unless for errors which affect the merits* of a judgment, decision, or decree complained of.

T.C.A. sec. 27-117 provides that no verdict or judgment shall be set aside or new trial granted by any appellate court in any civil or criminal case *on the ground of error in the charge of the judge to the jury* unless in the opinion of the appellate court *"after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."*

 Taking this statute to mean what it says, we must affirm the judgment of the lower court insofar as this particular error is concerned, unless it *affirmatively* appears to us the result would have been different if the error had not been made. This is simply an inverse way of stating that we must affirm unless it affirmatively appears the error affected the results of the trial. After the most serious consideration we have found nothing affirmative to that effect.

 The defense was based upon one statement of fact, that John Henry rode suddenly or abruptly out in front of the automobile from the mouth of the lane, where he was obscured by the bushes and growth along the edge of it, and that this was done so quickly and suddenly nothing could be done to avoid the collision. From this single fact theory defendant evolved two legal defenses, either one of which would have been a complete defense against liability, (1) that the plaintiff was guilty of di-

rect, proximate, contributory negligence, and (2) that the plaintiff was guilty of an independent, intervening act which was the direct and proximate cause of his injuries so that he could not recover. Defendant undertook to rely upon both these defenses. However, in the course of submitting these two legal defenses to the jury the trial judge made an error of law with respect to the contributory negligence defense, but submitted the other so that it was a complete defense if the jury believed defendant's fact theory. The jury rejected the fact theory and so rejected the defense of intervening act. How can we in the face of the statutes, and in view of the jury's action on the facts hold affirmatively the result would have been any different, or could have been any different for that matter, if the judge had submitted the case on the additional defense of contributory negligence? Under the statute, we must find affirmatively from this situation that if the law of contributory negligence had been correctly charged the jury would have found the facts differently before we can reverse. All reason and sense is to the contrary. The facts as found determined the applicable law—not the reverse. We overrule the assignment.

The ninth assignment of error is that the trial court erred in that, after charging defendant's special request No. 1, that if the intervening act of plaintiff John Henry was the proximate cause of his injury, defendant would not be guilty, the court then charged the jury "that would be true unless the defendant was negligent in failing to exercise ordinary care in the operation of his taxicab."

It is argued this was error because it is not the law that a defendant has to be free of negligence to be ab-

solved of liability if an independent, intervening act is a proximate cause of plaintiff's injuries.

■■ ■■ While it is true as plaintiff-in-error argues that the independent, intervening act of even a child may absolve a defendant of liability for negligence, this proposition is subject to such a fair and necessary qualification that we do not think the trial judge can be charged with error in undertaking to explain it as he did. And, we think that if the manner of his stating it was conceived by defendant to be objectionable he should have sought clarification.

After the trial judge had already given a charge on intervening, independent cause, he gave in charge a special request of defendant with an explanation as follows:

"THE COURT: Gentlemen, I have charged you to some extent on this point, and I am requested to charge you this additional which I do, and in doing that, I do not mean that this is any more important than the rest of the charge that I have given you, but it may be that I have overlooked charging it as fully as I should have, therefore, I give you this additional instruction as requested by defendant.

"I have charged you what proximate cause is. Now, applying that rule, if you find from the preponderance of the proof that the Plaintiff, John Henry Harper, came off this side road suddenly, in front of the defendant, at such a distance that defendant did not have time to stop, that would be an intervening act of the plaintiff and if the proximate cause of his injuries, then the defendant would not be liable and your verdict should be not guilty.

"That would be true unless the defendant was negligent and failing to exercise ordinary care in the operation of his taxicab. And it is for you to decide from all the proof in the case now, what the cause of this accident was. It is for you to decide what was the direct and proximate cause of the accident. And it is for you to decide whether there was any sudden emergency and it is for you to decide whether there was any intervening cause by any action of the plaintiff, John Henry Harper." Bill of Exceptions, p. 106.

As we read the charge the trial judge was simply undertaking to explain to the jury that the independent, intervening cause that will prevent a recovery for an act or omission of a negligent character must be a cause which interrupts the natural sequence of events, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. Moyers v. Ogle, 24 Tenn.App.682, 148 S.W.(2d)637(1941).

We are satisfied that when by a special request the defendant sought to have the court relate his prior general instructions on the subject of intervening cause to the particular facts of the case, the court owed plaintiffs the duty of explaining the limitations on the instructions given. If these instructions were meager or incomplete the defense should have asked for further instructions. Hailey v. Ogilvie, 2 Tenn.App. 607; Sutherland v. Shelton, 59 Tenn. 374; Hayes v. Cheatham, 74 Tenn. 1.

The tenth assignment complains of the failure of the trial judge to charge the jury on remote contributory negligence. This assignment is not good. If defendant

thought the question of remote contributory negligence existed in the case it was his duty to request a charge to this effect. Henry v. Sharpe, 9 Tenn.App. 350.

The eleventh assignment of error raises this question. The Court charged the jury: "I charge you that under Tennessee law, a child between the ages of seven and fourteen years of age is presumed incapable of exercising judgment and discretion requisite to charge him with contributory negligence. But such presumption is prima facie, only, and can be rebutted by evidence of capacity, and the burden of proving such capacity on the part of the child rests with the party that sets up the defense of contributory negligence."

■■ ■■ Defendant says this is an erroneous charge because the common law as charged by the court has been repealed by the implication of T.C.A. sec. 59-873, which provides "Every person riding a bicycle upon a roadway shall be granted all of the rights and be subject to all of the duties applicable to the driver of a vehicle by chapters 8 and 10 of this title."

It is argued from this that any child riding a bicycle on a highway is charged with the same duty and responsibility applicable to the operator of a motor vehicle. That this law changed the common law rule with respect to infant negligence liability, and made such liability absolute upon proof of violation of the statute.

We disagree with the plaintiff-in-error on this assignment for these reasons. T.C.A. sec. 59-872, immediately preceding the section on which the assignment depends, is in this language:

"Operation of bicycles and play vehicles—Effect of regulations. (a) It is a misdemeanor for any person to do any act forbidden or fail to perform any act required in secs. 59-872—59-878.

"(b) The parent of any child and the guardian of any ward shall not authorize or knowingly permit any such child or ward to violate any of the provisions of chapters 8 and 10 of this title.

"(c) These regulations applicable to bicycles shall apply whenever a bicycle is operated upon any highway or upon any path set aside for the exclusive use of bicycles subject to those exceptions stated herein. (Acts 1955, ch. 329, sec. 71.)"

In view of the legislative intention expressed here to impose liability and responsibility for children's compliance with T.C.A. sec. 59-873 upon their parents, it is not reasonable or necessary to imply an intent by these Code sections to impose criminal responsibility on the children too, so as to abolish the common law rule with respect to infants contributory negligence.

T.C.A. sec. 59-872 makes it a misdemeanor for any person to do any act forbidden, or fail to perform any act required, by T.C.A. secs. 59-872 through 59-878 and then by subsection (b), it imposes on the parent of a child the obligation of seeing the act is not violated. From this we must assume that immature children under direct parental control are recognized as not being responsible for violation of the acts. And, if there is no intent to impose responsibility upon children to comply with the act, it necessarily follows the statute imposes no such absolute duty on children as would make their violation of that duty contributory negligence as a matter of law.

There is another reason why we do not think the statute has the consequences contended for by plaintiff-in-error and that is, at the common law persons under the age of seven are incapable of contracting guilt and those between the ages of seven and fourteen are subject to a rebuttable presumption of incapacity to commit crime. State v. Doherty, 2 Tenn. 80; State v. Goin, 28 Tenn. 175; State v. Davis, 104 Tenn. 501, 58 S.W. 122. In view of this presumption it cannot be said the commission of a misdemeanor by the violation of these statutes makes the infant guilty of contributory negligence as a matter of law and deprives him of his common law rights with respect thereto. If there is no absolute duty to comply, there can be no absolute consequence such as defendant contends for flowing from failure to comply.

We do not think the analogy between the common law rules with respect to negligence and criminal responsibility on the part of children can be ignored in applying the Code sections involved. Each of these humane rules, based on the experience of adults with children, and exemplifying the policy and purpose of the law to hold accountable only those who understand the consequences of their acts, have not, in our opinion, been set aside by the Code sections under consideration.

The most the plaintiff-in-error was entitled to would have been, if he had requested it, an instruction that these statutes fix no absolute rule of conduct with respect to children between the ages of seven and fourteen, and their applicability would depend upon the affirmative showing of such maturity of mind and discretion as to distinguish between the right and the wrong involved in the particular case.

We have found no direct authority on this subject, but being of the opinion expressed, we overrule the assignment of error under consideration.

Plaintiff-in-error relies on two more assignments of error. The thirteenth complains of the failure of the court to charge a special request to the effect John Henry Harper was required to obey the statutory law applicable to motor vehicles. We do not think this assignment is good for the reasons we have just stated in disposing of assignment of error No. 12.

The last, or fourteenth assignment, complains of an error in the court's charge in that the court said plaintiff Johnny Harper, the father of John Henry Harper, sued on charges substantially the same as those sued on by his son, John Henry Harper. This assignment is wholly without merit and is overruled on the harmless error statutes.

The determinative factor in this case, which has necessarily ruled the disposition of most of the assignments of error, is that the jury who heard the only two witnesses to the accident, John Henry and defendant Thomas, believed defendant Thomas ran over John Henry while John Henry was on his side of the road and at a time when Thomas' car was out of control and skidding. This being the case, plaintiffs were entitled to recover in the absence of some positive legal error shown affirmatively to have affected the result. We find none. So, we overrule all of the assignments of error and affirm the judgment of the trial court.

Shriver and Chattin, JJ., concur.