**Leigh Craig HARWELL,**
**Plaintiff/Appellant,**

v.

**John WALTON, Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section at Jackson.

May 31, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 12, 1991.

Valerie Futris, William H. Fisher, III, Memphis, for plaintiff/appellant.

David E. Gordon, Memphis, Neely, Green, Fargarson & Brooke, for defendant/appellee.

FARMER, Judge.

This appeal arises out of a jury verdict in favor of the defendant. Vehicles driven by the plaintiff, Leigh Harwell, and by the defendant, John Walton, collided at the intersection of Jefferson Avenue and Second in Memphis. The plaintiff was traveling on Jefferson at the time of the accident and both she and an independent witness testified that she had a green light at the time of the collision. The defendant told the investigating officer that he "saw the red light for green." The plaintiff sustained

personal injuries and her 1986 Volvo incurred damage.

The defendant alleged that the plaintiff was guilty of contributory negligence in that she was driving too fast under the circumstances and that she failed to maintain control of her vehicle. At trial the defendant admitted negligence; therefore, the basic consideration for the jury was the contributory negligence of the plaintiff.

The contributory negligence defense was based upon plaintiff's deposition testimony that she was going 40 miles per hour just prior to the accident. The speed limit was 35 miles per hour. The plaintiff attempted to testify as to an experiment she conducted to show that she could not have been going 40 m.p.h. The plaintiff had returned to the scene of the accident in her Volvo and determined, after reenacting the events, that her maximum speed at the time of the collision was 26 m.p.h. The trial court would not allow the introduction of this experiment on the basis that the plaintiff was not qualified to testify about the maximum capabilities of machinery.

Prior to trial the defendant's liability insurance carrier had paid for the plaintiff's repairs to her automobile. At trial the plaintiff was asserting a right to $3,000 in "depreciation" to the vehicle and compensation for loss of her use of the vehicle, which amount was over and above the amount the insurance carrier had paid. Allegedly in an attempt to narrow the property damage issue to that of depreciation, the defendant asked the plaintiff on cross examination,

Q. The repairs to your car, you indicated, were made; right?

A. Yes, sir.

Q. And you are driving this car now?

A. Yes, sir.

Q. And that repair was made by a representative of Mr. Walton?

A. What, exactly, is your question?

Q. The money that you got to make the—

A. Yes, sir.

Q. Mr. Walton—It was a poor question. The money, which you indicated was a little less than $5,000, was provided by representatives of Mr. Walton?

A. Yes, sir.

After considerable discussion regarding the inadmissibility of the above excerpt and the prejudicial effect of such, both parties agreed that they did not want a mistrial. In an attempt to counter this potentially prejudicial testimony, the trial court invited remedial suggestions from both parties. The plaintiff requested the trial court's permission to inform the jury that the "representative" was the defendant's liability carrier. The request was denied. Ultimately, in an attempt to cure any prejudicial effect, the plaintiff was asked, "[Y]ou are not saying that Mr. Walton gave you that money himself, are you?" The plaintiff answered, "No." After extensive discussion of the effect of the settlement or the payment of the repair bills, the plaintiff withdrew her property damage claim.

The issues on appeal as set forth by the appellant are:

I. Whether the trial court erred in failing to permit the plaintiff/appellant to introduce evidence of tests conducted by her tending to show that she was not guilty of excessive speed.

II. Whether the trial court erred in failing to grant a new trial on grounds of the misconduct of defendant/appellee's counsel in eliciting from the plaintiff/appellant testimony, which he knew to be inadmissible and highly prejudicial, to-wit: that payment for repair of plaintiff/appellant's automobile had already been made by "defendant's representative."

III. Whether the trial court erred in failing to permit the plaintiff/appellant to establish that it was the defendant/appellee's liability insurance carrier which paid for the repair of her automobile.

I.

The plaintiff contends that the trial court committed reversible error in failing to admit the plaintiff's experimental evidence that she was only going 26 miles an hour at the time of the accident.

 The plaintiff's offer of proof in this case consisted of a narration by counsel of the plaintiff's expected testimony in which he stated:

> [W]hat I anticipate she is going to say is that we went back out there [to the scene of the accident] and in an effort to see what the maximum speed she could attain between Main Street and Third street was, and she tried to accelerate as fast as she could, and found the maximum speed she could attain was 26 miles an hour between Main and Second Street....

"[I]t is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible." *State v. Goad,* 707 S.W.2d 846, 853 (Tenn.1986). While this narrative approach is by no means the best or the encouraged method, it does meet the technical requirements of T.R.C.P. 43.03 [1] and therefore is reviewable. *Id.* at 853; *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801 (Tenn.1975).

The defendant contends, and the trial court agreed, that the plaintiff was not qualified to testify about the capabilities of her automobile. The defendant relies on *Pruitt v. State,* 216 Tenn. 686, 393 S.W.2d 747, 751 (1965), for this proposition. In holding that a breathalyzer machine must be operated by a qualified expert, the court in *Pruitt* stated that "qualified experts must operate the machine, and they, or someone else qualified, must interpret these test results in evidence before a trial court." *Id.* at 750–751.

 We are of the opinion, however, that the rule in *Pruitt* is not applicable to the case at hand. Experimental evidence is generally admissible if it is relevant and probative. The probative value of the experiment can be ascertained by determining whether the experiment is identical or similar to the conditions of the litigated transaction. "Experiments made under proper test conditions are competent evidence, and are favorably received." 11 Tennessee Jurisprudence *Evidence,* § 84 (1984). Additionally, a lay witness can testify in the form of opinions where:

(1) The opinions and inferences do not require a special knowledge, skill, experience, or training;

(2) The witness cannot readily and with equal accuracy and adequacy communicate what the witness has perceived to the trier of fact without testifying in terms of opinions or inferences; and

(3) The opinions or inferences will not mislead the trier of fact to the prejudice of the objecting party.

T.R.E. 701.

 The plaintiff simply wanted to testify that *she* could only obtain 26 miles an hour after accelerating as fast as she could between Main and Third Street. Her capability to do this or to operate this vehicle is not something that requires "scientific, technical, or other specialized knowledge...." [2] *See* T.R.E. 702. The plaintiff is not contending that her vehicle does not have the mechanical capabilities of going any faster. She is merely alleging that she, while driving at her normal capacity, could not go faster than 26 miles an hour. The fact that a lay witness conducted this experiment merely goes to the weight of the evidence, not its admissibility. We

---

**1.** T.R.C.P. 43.03 states as follows:

**Record of Excluded Evidence**

In an action tried by a jury, if an objection to proffered evidence is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by that evidence. The court may require the proffered evidence or offer of proof to be presented out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury, a similar procedure may be followed.

**2.** Rule 702 of the Tennessee Rules of Evidence states as follows:

**Testimony by experts.**—If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

think the authority of *Luckey v. Gowan*,[3] 46 Tenn.App. 392, 330 S.W.2d 45 (1959), *Byers v. Nashville C. and St. L. Ry. Co.*,[4] 94 Tenn. 345, 29 S.W. 128 (1985), and *Fisher v. Travelers' Insurance Co.*,[5] 124 Tenn. 450, 138 S.W. 316 (1911) supports the admissibility of this experimental evidence.

■ However, unless this error has affected the result, we are compelled to affirm the judgment of the trial court. *Bass v. Barksdale*, 671 S.W.2d 476 (Tenn.Ct. App.1984); *Thomas v. Harper*, 53 Tenn. App. 549, 385 S.W.2d 130 (1964). We are of the opinion that the error was harmless error. The plaintiff testified that her deposition testimony with respect to her speed was wrong and she testified that these estimates were "off the top of my head and not really thinking about what I was saying." In addition, the plaintiff testified about the results of the experiment:

A. A couple of questions later, he asked me and he said you said you were probably going 30 miles an hour. What speed were you going prior to that? And just off the top of my head, and not really thinking about what I was saying, I made the statement that I was probably going 40 miles an hour.

Q. Now, since the time you gave that deposition, have you gone back to the scene of the accident and looked at it and refreshed your recollection about what happened?

A. Yes, sir.

Q. State whether or not as a result of having viewed the scene and refreshing your recollection about the matter, you were, in fact, going 40 miles and hour at any time that you entered Jefferson Street—I mean—yes, Jefferson Street

here from Front Street up until the time of the accident?

A. Well, as I stated earlier, it was raining that night, the roads were wet, and I had turned right on Jefferson from Front Street. And I don't know the exact distance between Front and Main Street, but it's a short distance, and so I couldn't have gotten up the speed to 40 miles an hour before I stopped at the red light at Main, and then once I proceeded through the flashing red light at Main, the light at Second was still red at that point in time. And I tried even once when I went back to review it, I tried when the light at Second had turned green, and I tried to put on as much gas as I could and....

Q. Now, as a result of having gone back to the scene and refreshed your recollection about it, how fast would you say you were going, approximately, because I know you weren't watching the speedometer, but approximately how fast were you going at the time of the collision and back here between Main and Second?

A. Approximately 15 miles an hour—15 to 20 miles an hour, but I don't know exactly.

Essentially, the plaintiff succeeded in getting all of the pertinent experimental results into evidence. She testified that "having gone back to the scene" and having "refreshed [her] recollection," that she was only going "15 to 20 miles an hour." She basically testified to everything that her counsel presented in his narrative offer of proof.

II.

■ As we have noted, it was made known to the jurors that a representative

---

3. *Luckey* involved an action by an eastbound automobile driver who was forced off the road by a westbound driver. The plaintiff filed suit against the westbound driver and his business partner for property damage and personal injuries. Subsequent to the above incident, the partner performed an experiment at the scene of the accident with a vehicle of approximately the same size and weight. The court held that this experimental evidence was admissible.

4. In *Byers* the defendant Railroad was allowed to introduce an ex parte test made after the

accident in question. The purpose of the experiment was to show that the train could not have been stopped after the deceased person could have been seen on the railroad tracks.

5. In *Fisher* testimony of a lay witness about experiments performed after the litigated transaction occurred were properly admitted. The experiment indicated that a trolley car rounding a curve would not disturb a person's balance unless it were going at excessive speeds. Furthermore, even if it did the person would fall in the opposite direction than the plaintiff fell.

for the defendant had paid the plaintiff's repair bills on her automobile. The plaintiff contends that the defendant's statements were highly prejudicial and improper. Although this may be true,

> [w]here a party has knowledge of facts which would justify a mistrial, it is his duty to bring such facts to the attention of the trial court immediately and he is not permitted to suppress such information until he has received an adverse decision. *Tinkle v. Dunivant,* 84 Tenn. (16 Lea) 503 (1886). That is to say, a party may not save an infirmity in the proceedings as an "ace in the hole" to be used in case of an adverse decision or suppressed in event of a favorable decision. A mistrial must be demanded as soon as its grounds are known, otherwise, it is waived.

*Spain v. Connolly,* 606 S.W.2d 540, 543–544 (Tenn.Ct.App.1980). The plaintiff did not ask for a mistrial. The trial judge even invited a mistrial on four occasions. Plaintiff clearly did not want a mistrial, therefore, all objections to such are now waived.

### III.

After the defendant made it known to the jurors that a representative of the defendant had paid the plaintiff's repair bills, the plaintiff wanted to introduce evidence that this "representative" was in fact the liability insurance carrier for the defendant. The trial court denied the plaintiff's request and the plaintiff contends that this was reversible error. The plaintiff argues that where the defendant has "opened the door" then it is proper for her to establish the existence of the liability carrier.

It was only revealed to the jury that a "representative" of the defendant had paid the repair bills. If the trial court had allowed the introduction of the liability insurance carrier, it would have been prejudicial. Furthermore, the plaintiff cannot complain of the remedial measures taken by the trial court when she waived her right to a mistrial.

The judgment of the trial court is affirmed and costs of this appeal are taxed to the appellant, for which execution may issue if necessary.

TOMLIN, P.J., W.S., and CRAWFORD, J., concur.